MJP

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

FILED 07 DEC 11 AM 10:33 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY: [signature] DEPUTY

## ARREST ON OUT-OF-DISTRICT OFFENSE

CASE NUMBER: '07 MJ 2869

The person charged as MONTOYA, Edgar Ismael now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the Central District of California on 9/27/07 with Title 18:21 USC, 1962(c);1962(d);846,841(a)(1), 841(b)(a)(A), 841(b)(1)(B);1959(a)(5);841(a)(1), 841(b)(a)(B);841(a)(1), 841(b)(a)(A);841(a)(1), in violation of: Racketeer Influenced and Corrupt Organizations; Possession with Intent to Distribute and Distribute Powder Cocaine, Cocaine (Base), and Methamphatamine

The charging documents and the warrant for the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: 12/11/07

[signature]
Raymond Gellatly
~~CI-Deputy United~~ States Marshal

Reviewed and Approved

DATE:

[signature]
Assistant United States Attorney

M/P

1398478

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America<br>Plaintiff(s)<br>v.<br>EDGAR MONTOYA<br>aka Spunky<br>Defendant(s) | CASE NUMBER:<br>**SACR07-202** |
| | **WARRANT FOR ARREST**<br>**UNDER SEAL** |

#10

TO: UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest EDGAR MONTOYA, aka Spunky and bring him/her forthwith to the nearest Magistrate Judge to answer a(n): ☐Complaint ■Indictment ☐Information ☐Order of Court ☐Probation Violation Petition ☐Violation Notice charging him/her with: (ENTER DESCRIPTION OF OFFENSE BELOW)

**Racketeer Influenced and Corrupt Organizations;**
**Racketeer Influenced and Corrupt Organizations Conspiracy Conspiracy;**
**Possession with Intent to Distribute and Distribution of ~~Power~~ Powder Cocaine, Cocaine (Base), and Methamphetamine;**
**Violent Crimes in Aid of Racketeering;**
**Possession with Intent to Distribute Cocaine;**
**Possession with Intent to Distribute Crack Cocaine;**
**Possession with Intent to Distribute Methamphetamine;**

in violation of Title 18:21: United States Code, Section(s) 1962(c):1962(d):846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B):1959(a)(5):841(a)(1), 841(b)(1)(B):841(a)(1), 841(b)(1)(A):841(a)(1), 841(b)(1)(B):841(a)(1):

Sherri R. Carter
NAME OF ISSUING OFFICER

Clerk of Court
TITLE OF ISSUING OFFICER

SIGNATURE OF DEPUTY CLERK

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

September 27, 2007 LOS ANGELES, CALIFORNIA
DATE AND LOCATION OF ISSUANCE

BY: PATRICK J. WALSH
NAME OF JUDICIAL OFFICER

## RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

DATE RECEIVED

NAME OF ARRESTING OFFICER

DATE OF ARREST

TITLE

DESCRIPTIVE INFORMATION FOR DEFENDANT CONTAINED ON PAGE TWO

SIGNATURE OF ARRESTING OFFICER

**WARRANT FOR ARREST**

ORIGINAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CASE SUMMARY

FILED

Case Number SACR 07-002 Defendant Number 10
U.S.A. v. Edgar Montoya Year of Birth 1973
☒ Indictment ☐ Information Investigative agency (FBI, DEA, etc.) ATF/DEA

NOTE: All items are to be completed. Information not applicable or unknown shall be indicated as "N/A".

**OFFENSE/VENUE**

a. Offense charged as a: ☐ Petty Offense
☐ Misdemeanor ☐ Minor Offense ☒ Felony
b. Date of offense Up to September 27, 2007
c. County in which first offense occurred
Los Angeles County
d. The crimes charged are alleged to have been committed in:
CHECK ALL THAT APPLY
☒ Los Angeles ☐ Ventura
☐ Orange ☐ Santa Barbara
☐ Riverside ☐ San Luis Obispo
☐ San Bernardino ☐ Other ______

Citation of offense 18/1962(c); 1962(d); 21/846, 841(a)(1), 841(b)(1)(A) and B; 18/1959(a); 18/924(c); 18/922(g)(1); 18/2; 21/853; 18/1961

**RELATED CASE**

Has an indictment or information involving this defendant and the same transaction or series of transactions been previously filed and dismissed before trial? ☒ No ☐ Yes
IF YES Case Number ______

Pursuant to Section 11 of General Order 07-02, criminal cases may be related if a previously filed indictment or information and the present case:
a. arise out of the same conspiracy, common scheme, transaction, series of transactions or events; or
b. involve one or more defendants in common, and would entail substantial duplication of labor in pretrial, trial or sentencing proceedings if heard by difference judges.

Related case(s), if any: MUST MATCH NOTICE OF RELATED CASE ______

**PREVIOUSLY FILED COMPLAINT**

A complaint was previously filed on: N/A
Case Number ______
Charging ______

The complaint: ☐ is still pending
☐ was dismissed on: N/A

**COMPLEX CASE**

Are there 8 or more defendants in the Indictment/Information?
☒ Yes* ☐ No

Will more than 12 days be required to present government's evidence in the case-in-chief?
☒ Yes* ☐ No

*AN ORIGINAL AND 3 COPIES (UNLESS ELECTRONICALLY FILED) OF THE NOTICE OF COMPLEX CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

**Superseding Indictment/Information**

This is the N/A superseding charge, i.e. 1st, 2nd.
The superseding case was previously filed on: ______

Case Number ______

The superseded case:
☐ is still pending before Judge/Magistrate Judge ______

☐ was previously dismissed on ______

Are there 8 or more defendants in the superseding case?
☒ Yes* ☐ No

Will more than 12 days be required to present government's evidence in the case-in-chief?
☒ Yes* ☐ No

Was a Notice of Complex Case filed on the Indictment or Information?
☒ Yes ☐ No

*AN ORIGINAL AND 3 COPIES OF THE NOTICE OF COMPLEX CASE MUST BE FILED 2 BUSINESS DAYS BEFORE THE ARRAIGNMENT IF EITHER YES BOX IS CHECKED.

Is an interpreter required: ☐ Yes ☒ No
IF YES, list language and/or dialect: ______

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CASE SUMMARY

**OTHER**

☒ Male ☐ Female
☒ U.S. Citizen ☐ Alien
Alias Name(s) Spunky

This defendant is charged in: ☐ All counts
☒ Only counts: 1,2,3,4,27,28,29,30,31 & 32

☐ This defendant is designated as "High Risk" per 18 USC 3146(a)(2) by the U.S. Attorney.

☐ This defendant is designated as "Special Case" per 18 USC 3166(b)(7).

Is defendant a juvenile? ☐ Yes ☒ No
IF YES, should matter be sealed? ☐ Yes ☐ No

The area of substantive law that will be involved in this case includes:

☐ financial institution fraud ☐ public corruption
☐ government fraud ☐ tax offenses
☐ environmental issues ☐ mail/wire fraud
☒ narcotics offenses ☐ immigration offenses
☒ violent crimes/firearms ☐ corporate fraud
☐ Other: ____

**CUSTODY STATUS**

**Defendant is not in custody:**

a. Date and time of arrest on complaint: ____
b. Posted bond at complaint level on: ____
in the amount of $ ____
c. PSA supervision? ☐ Yes ☐ No
d. Is a Fugitive ☐ Yes ☐ No
e. Is on bail or release from another district: ____
f. ☐ Has not been arrested but will be notified by summons to appear.
g. Warrant requested. ☒ Yes ☐ No

**Defendant is in custody:**

a. Place of incarceration: ☐ State ☐ Federal
b. Name of Institution: ____
c. If Federal: U.S. Marshal's Registration Number: ____
d. ☐ Solely on this charge. Date and time of arrest: ____
e. On another conviction: ☐ Yes ☐ No
IF YES ☐ State ☐ Federal ☐ Writ of Issue
f. Awaiting trial on other charges: ☐ Yes ☐ No
IF YES ☐ State ☐ Federal AND
Name of Court: ____

Date transferred to federal custody: ____

This person/proceeding is transferred from another district pursuant to F.R.CrP. ___ 20 ___ 21 ___ 40

**EXCLUDABLE TIME**

Determinations as to excludable time prior to filing indictment/information EXPLAIN: ____

Date 9/27/07

[signature]
*Signature of Assistant U.S. Attorney*

Peter Hernandez
*Print Name*

MLP

FILED
CLERK, U.S. DISTRICT COURT
SEP 27 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. | SA CR 07-00202 |
| JESSE VASQUEZ, aka Pelon, GILBERTO OLIVA, aka Chaparro, ALIZANDRO RINCON, aka Alley Cat, ARTURO CRUZ, aka Art, JOSE GONZALEZ, aka Black, aka Negro, NOE GONZALEZ, aka Lil Black, ALBERTO HERNANDEZ, aka Sugar, aka Cruiser, FRANCISCO FLORES, aka Lil Frank, MANUEL HERNANDEZ, aka Frog, EDGAR MONTOYA, aka Spunky, FELIX MARTINEZ, aka Wacko, ENRIQUE VILLEGAS, aka Mono, | INDICTMENT [18 U.S.C. § 1962(c): Racketeer Influenced and Corrupt Organizations; 18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A): Conspiracy; 18 U.S.C. § 1959(a): Violent Crimes in Aid of Racketeering; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and (B): Possession with Intent to Distribute and Distribution of Powder Cocaine, Cocaine (Base), and Methamphetamine; 18 U.S.C. § 924(c): Use or Carrying and Possession of Firearm During and in Furtherance of Drug Trafficking Crime and Crime of Violence; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm; |

PAH:KR:pah

| | |
|---|---|
| GUILLERMO PANTOJA,<br>aka Silent,<br>JAIME ORTIZ,<br>aka Niggy,<br>JOSE GUTIERREZ,<br>aka Hoax,<br>aka Sleepy,<br>CESAR DELA CRUZ,<br>aka Thumper,<br>JESUS ANDRADE,<br>aka Shorty,<br>FRANCISCO ZENDEJAS,<br>aka Bad Boy,<br>JOSE ZENDEJAS,<br>aka Demon,<br>FRANK MEDINA,<br>aka Largo,<br>GERARDO HERNANDEZ,<br>aka Gato,<br>FRANCISCO JAVIER CASTILLO,<br>aka Clumsy,<br>LUIS A. AGUILAR,<br>aka Woody, and<br>MICHAEL ESTRADA,<br>aka Casper,<br><br>Defendants. | 18 U.S.C. § 922(j): Possession of a Stolen Firearm; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 21 U.S.C. § 853, 18 U.S.C. § 1961: Criminal Forfeiture] |

The Grand Jury charges:

# TABLE OF CONTENTS


| | PAGE |
|---|---|
| INTRODUCTORY ALLEGATIONS: THE RACKETEERING ENTERPRISE | 1 |
| GENERAL BACKGROUND OF THE F13 GANG | 2 |
| PURPOSE OF THE ENTERPRISE | 4 |
| THE MEANS AND METHODS OF THE ENTERPRISE | 5 |
| COUNT ONE | 8 |
| The Racketeering Activity | 8 |
| The Pattern of Racketeering Activity | 8 |
| COUNT TWO | 28 |
| Means by which the Objects Of the Conspiracy were to be Accomplished | 29 |
| Overt Acts | 31 |
| COUNT THREE | 74 |
| Objects of the Conspiracy | 74 |
| Means by which the Objects Of the Conspiracy were to be Accomplished | 75 |
| Overt Acts | 75 |
| COUNTS FOUR through FOURTEEN (VICAR: 18 U.S.C. § 1959) | 77-88 |
| COUNTS FIFTEEN through TWENTY-TWO (21 U.S.C. § 841) | 89-96 |
| COUNT TWENTY-THREE (18 U.S.C. § 1956) | 97 |
| COUNTS TWENTY-FOUR through THIRTY TWO (21 U.S.C. § 841) | 98-106 |
| COUNTS THIRTY-THREE through FORTY TWO (21 U.S.C. § 924) | 107-116 |
| COUNTS FORTY-THREE through FIFTY ONE (18 U.S.C. § 922) | 117-125 |
| COUNT FIFTY-TWO (Criminal Forfeiture: 18 U.S.C. § 1963) | 126 |
| COUNT FIFTY-THREE (Criminal Forfeiture: 18 U.S.C. § 853) | 127 |

## INTRODUCTORY ALLEGATIONS

## THE RACKETEERING ENTERPRISE

1. At all relevant times, defendants JESSE VASQUEZ, also known as ("aka") Pelon ("VASQUEZ"), GILBERTO OLIVA, aka Chaparro ("OLIVA"), ALIZANDRO RINCON, aka Alley Cat ("RINCON"), ARTURO CRUZ, aka Art ("CRUZ"), JOSE GONZALEZ, aka Black, aka Negro ("J. GONZALEZ"), NOE GONZALEZ, aka Lil Black ("N. GONZALEZ"), ALBERTO HERNANDEZ, aka Sugar, aka Cruiser ("A. HERNANDEZ"), FRANCISCO FLORES, aka Lil Frank ("FLORES"), MANUEL HERNANDEZ, aka Frog ("M. HERNANDEZ"), EDGAR MONTOYA, aka Spunky ("MONTOYA"), FELIX MARTINEZ, aka Wacko ("MARTINEZ"), ENRIQUE VILLEGAS, aka Mono ("VILLEGAS"), GUILLERMO PANTOJA, aka Silent ("PANTOJA"), JAIME ORTIZ, aka Niggy ("ORTIZ"), JOSE GUTIERREZ, aka Hoax, aka Sleepy ("GUTIERREZ"), CESAR DELA CRUZ, aka Thumper ("DELA CRUZ"), JESUS ANDRADE, aka Shorty ("ANDRADE"), FRANCISCO ZENDEJAS, aka Bad Boy ("F. ZENDEJAS"), JOSE ZENDEJAS, aka Demon ("J. ZENDEJAS"), FRANK MEDINA, aka Largo ("MEDINA"), GERARDO HERNANDEZ, aka Gato ("G. HERNANDEZ"), FRANCISCO JAVIER CASTILLO, aka Clumsy ("CASTILLO"), LUIS A. AGUILAR, aka Woody ("AGUILAR"), MICHAEL ESTRADA, aka Casper ("M. ESTRADA"), and others were members and associates of an organization engaged in, among other things, murder, conspiracy to commit murder, attempted murder, conspiracy to traffic in narcotics, narcotics trafficking, robbery and extortion. At all relevant times, this organization, which is known as the Florencia 13 ("F13") Gang, operated in the Central District of California and elsewhere. The F13 Gang, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section

1961(4), that is, a group of individuals associated in fact. The enterprise engaged in, and its activities affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

GENERAL BACKGROUND OF THE F13 GANG

2. The F13 Gang was founded in the early 1950s. The street gang began as a small group of individuals who lived in and around the area of Florence Boulevard, in and near Los Angeles, California. Initially, the gang was primarily involved in street robberies, narcotic sales, and fighting with rival gang members regarding "turf battles." Through the years, however, the gang has dramatically increased its membership by absorbing smaller, less powerful gangs who could not successfully defend themselves.

3. There are at least thirty cliques, or subsets, of the F13 Gang that control an area approximately three square miles in and around the unincorporated areas of South Los Angeles County. The number of cliques has changed over the years as new cliques have been allowed to join the F13 Gang, while other cliques have been kicked out of the F13 Gang. The boundaries border the City of Los Angeles to the west, north and south, includes the City of Huntington Park, and up through the borders of the Cities of Maywood and Southgate to the east, and Lynwood to the southeast. The F13 Gang controls drug distribution and other illegal activities within the unincorporated area of South Los Angeles County.

4. The F13 Gang is controlled by senior gang members who

are also members and associates of an organization known as the "Mexican Mafia," or "La Eme." The Mexican Mafia is an organized group of individuals that controls the narcotics and other criminal activities within California's state prisons. Members of the Mexican Mafia come from the ranks of local street gangs, including the F13 Gang. Members and associates of the F13 Gang paid "taxes" to members and associates of the Mexican Mafia in order to maintain control over their territory and in order to assure protection for the F13 Gang and it members once they entered the California penal institutions. Through instructions written in letters to fictitious individuals and "mail drop" locations, and "kites," which are notes passed by state and county prisoners, the F13 Gang was able to receive instructions from its senior gang leaders. For example, in 2004, unindicted coconspirator AC, the leader of the F13 Gang, issued written orders for all F13 Gang members to follow from his prison cell at Pelican Bay State Prison. These rules commanded select individuals and senior gang members, known as the presidents of the cliques or "shot callers," to regulate F13 Gang activity by ordering other gang members to coordinate the F13 Gang's illegal activities and controlling the illegal distribution of narcotics within the F13 Gang area. Shot callers, through the directives of unindicted coconspirator AC and other senior leaders, directed the activities of the F13 Gang, which included cleansing their neighborhood of individuals who cooperated with law enforcement and members and associates of African-American street gangs who lived in or near the F13 Gang controlled area. These rules also called for F13 Gang members to "put in work," which referred to

committing crimes in support of the F13 Gang. The F13 Gang enforces its rules and promotes discipline among its members and associates by murdering, attempting to murder, conspiring to murder, assaulting, and threatening those members and associates who violate the rules or pose a threat to the enterprise.

5. Shot callers and their subordinates also control admission to the F13 Gang. A person can be admitted to the F13 Gang only after the approval of the shot callers. Membership typically depends upon whether the person has participated in a significant number of criminal acts on behalf of the F13 Gang. This often is referred to as whether the person has "put in" enough "work" for the neighborhood. Some individuals, however, are admitted to the F13 Gang based upon an older relative's position within the gang or through their long-time association with senior F13 Gang members. These individuals, as with full-fledged F13 Gang members, will "claim" F13 Gang membership.

6. The rules also ensured that drug dealers and other participants in illegal activities, who were under the control of the F13 Gang, paid "taxes" to members of the F13 Gang. As a result, F13 Gang shot callers ordered narcotics dealers and others in the area to pay a percentage of the proceeds, from the sales of narcotics or other criminal activity, to the F13 Gang.

PURPOSES OF THE ENTERPRISE

7. The word "member" below refers to a full member of the F13 Gang. Individuals who are affiliated with the F13 Gang and who assist the members are referred to as "associates" of the F13 Gang. Both members of the F13 Gang and their associates are participants in the F13 criminal enterprise.

8. The purposes of the F13 Gang criminal enterprise include, but are not limited to, the following:

a. Enriching the members of the F13 Gang through, among other things, control and participation in the distribution of narcotics in F13 Gang territory and elsewhere.

b. Expanding the sales of narcotics to different cities and states within the United States.

c. Maintaining control over all F13 Gang territory.

d. Preserving, protecting, and expanding the power of the F13 Gang through the use of intimidation, violence, threats of violence, assaults, and murders.

e. Eliminating African-American rival gangs that congregate in areas near, or in, F13 Gang controlled territory.

f. Exposing and punishing F13 Gang members residing in F13 Gang controlled territories who cooperate with law enforcement.

g. Promoting and enhancing the F13 Gang and the activities of its members and associates.

h. Controlling the illegal activities that generate income by "taxing" drug dealers, prostitutes and fraudulent identity card dealers in area controlled by the F13 Gang.

i. Providing protection from physical assaults for F13 Gang members when they enter the California penal system.

THE MEANS AND METHODS OF THE ENTERPRISE

9. The means and methods by which the defendants and other members and associates of the F13 Gang conduct and participate in the conduct of the affairs of the F13 Gang include:

a. Members and associates of the F13 Gang use the F13

criminal enterprise to commit, and attempt and threaten to commit, acts of violence, including murder, to protect and expand the enterprise's criminal operations, which include the assaults of rival gang members.

b. Members and associates of the F13 Gang use the F13 criminal enterprise to promote a climate of fear through violence and threats of violence.

c. Leaders of the F13 Gang promulgate written rules to be followed by all participants in the F13 criminal enterprise, including that a participant in the enterprise not act as an informant to law enforcement authorities regarding the activities of the enterprise and to protect their F13 Gang territory from rival gang members.

d. Members and associates of the F13 Gang use the F13 criminal enterprise to murder, attempt to murder, assault, and threaten those participants in the enterprise and others who violate the rules or pose a threat to the enterprise in order to promote discipline and enforce the rules of the F13 criminal enterprise.

e. Members and associates of the F13 Gang are entitled to conduct, and in fact conduct, illegal activities under the protection of the F13 criminal enterprise in order to generate income.

f. Members and associates of the F13 Gang engage in the trafficking of controlled substances in order to generate income.

g. Members and associates of the F13 criminal enterprise, with the permission of F13 Gang leaders, "tax"

illicit activities, including prostitution, drug trafficking, and the selling of fraudulent items and documents in order to generate income and control the illegal activity undertaken in F13 Gang controlled territories.

h. Leaders and shot callers within the F13 criminal enterprise control the collection of taxes to the Mexican Mafia in order to further the trafficking of controlled substances.

i. Members and associates of the F13 Gang criminal enterprise provide assistance to members and associates of the Mexican Mafia in order to protect F13 Gang members from physical assaults by others when they are incarcerated in local, state or federal prisons.

j. Members of the F13 criminal enterprise have recently attempted to conceal from law enforcement the existence of the F13 Gang, the identity of its participants, the ways in which it conducts its affairs, and the locations at which it discusses and conducts its affairs in order to perpetuate the F13 criminal enterprise.

COUNT ONE

[18 U.S.C. § 1962(c)]

1. Paragraphs One through Nine of the Introductory Allegations are realleged and incorporated by reference as though fully set forth herein.

THE RACKETEERING OFFENSE

2. Beginning on a date unknown to the Grand Jury, and continuing until approximately September 27, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, J. MEDINA, G. HERNANDEZ, AGUILAR, and M. ESTRADA, and others known and unknown to the Grand Jury, being persons employed by and associated with the F13 Gang criminal enterprise described above, which was an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, through a pattern of racketeering activity, that is, through the commission of the acts set forth below.

THE PATTERN OF RACKETEERING ACTIVITY

3. The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

Racketeering Act One

Conspiracy to Distribute Narcotics

4. Beginning on a date unknown to the Grand Jury and continuing to on or about September 27, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, AGUILAR, M. ESTRADA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

a. To distribute at least five kilograms of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

b. To distribute at least fifty grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); and,

c. To distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

Racketeering Act Two

Conspiracy to Extort

5. Beginning on a date unknown to the Grand Jury and continuing to on or about September 27, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, MEDINA, and G. HERNANDEZ, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally extort, by means of force and threats, money and property from individuals conducting illegal activity in areas controlled by the F13 Gang, in violation of California Penal Code Sections 31, 182, and 518-20.

Racketeering Act Three

Armed Robbery of IA and RL

6. On or about August 8, 1996, in Los Angeles County, within the Central District of California and elsewhere, defendant M. ESTRADA committed an act involving robbery, namely, the attempted armed robbery of victims IA and RL, in violation of California Penal Code Sections 31 and 211.

Racketeering Act Four

Distribution of Cocaine Base in the Form of Crack

7. On or about November 18, 1996, in Los Angeles County, within the Central District of California, defendant GUTIERREZ distributed approximately .24 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1).

Racketeering Act Five

Possession with Intent to Distribute Cocaine Base in the Form of Crack

8. On or about February 24, 1998, in Los Angeles County, within the Central District of California, defendant ORTIZ knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 46.8 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

Racketeering Act Six

Possession with Intent to Distribute Cocaine Base in the Form of Crack

9. On or about September 3, 1998, in Los Angeles County, within the Central District of California, defendant AGUILAR knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 8.02 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

Racketeering Act Seven

Possession with Intent to Distribute Cocaine Base in the Form of Crack

10. On or about April 21, 2000, in Los Angeles County, within the Central District of California, defendant DELA CRUZ knowingly and intentionally possessed with intent to distribute approximately .8 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Racketeering Act Eight

Possession with Intent to Distribute Cocaine Base in the Form of Crack

11. On or about November 23, 2001, in Los Angeles County, within the Central District of California, defendant PANTOJA knowingly and intentionally possessed with intent to distribute approximately 4.4 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Racketeering Act Nine

Conspiracy to Commit Murder

12. Beginning on a date unknown to the Grand Jury and continuing until April 11, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants N. GONZALEZ, A. HERNANDEZ and MONTOYA, and others, conspired to kill

with malice aforethought an individual driving a red truck in Los Angeles, California, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182 and 187.

Racketeering Act Ten

Conspiracy to Commit Murder

13. Beginning on a date unknown to the Grand Jury and continuing until April 11, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants N. GONZALEZ and A. HERNANDEZ, and others, conspired to kill with malice aforethought an unidentified male residing on Flower Street, in Los Angeles, California, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182 and 187.

Racketeering Act Eleven

14. The defendants named below committed the following acts involving narcotics trafficking, either of which constitute the commission of Racketeering Act Eleven.

a. Possession with Intent to Distribute Cocaine

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants J. GONZALEZ and N. GONZALEZ knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 224.3 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

b. Possession with Intent to Distribute Cocaine Base in the Form of Crack

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants J. GONZALEZ and N. GONZALEZ knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 228.7 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

c. Possession with Intent to Distribute Methamphetamine

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants J. GONZALEZ and N. GONZALEZ knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 50.5 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

Racketeering Act Twelve

Use of a Communication Facility to Facilitate Narcotics Distribution on May 12, 2005

15. On or about May 12, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants N. GONZALEZ and PANTOJA knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under

the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

<u>Racketeering Act Thirteen</u>

16. The defendants named below committed the following acts involving narcotics trafficking, either of which constitute the commission of Racketeering Act Thirteen.

a. <u>Possession with Intent to Distribute Cocaine</u>

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants N. GONZALEZ and ANDRADE knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 101.3 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

b. <u>Possession with Intent to Distribute Cocaine Base in the Form of Crack</u>

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants N. GONZALEZ and ANDRADE knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 154.7 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

c. Possession with Intent to Distribute Methamphetamine

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants N. GONZALEZ and ANDRADE knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 6.8 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

Racketeering Act Fourteen

Use of a Communication Facility to Facilitate Narcotics Distribution on June 16, 2005

17. On or about June 16, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and J. ZENDEJAS knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Fifteen

Conspiracy to Commit Murder

18. Beginning on a date unknown to the Grand Jury and continuing until June 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants OLIVA

and A. HERNANDEZ, and others, conspired to kill with malice aforethought JI, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182 and 187.

Racketeering Act Sixteen

Attempted Murder of RB

19. On or about June 24, 2005, in Los Angeles County, within the Central District of California, defendant M. HERNANDEZ unlawfully with malice aforethought did willfully participate in the attempted murder of RB, in violation of California Penal Code Sections 21a, 31, 664, and 187.

Racketeering Act Seventeen

Use of a Communication Facility to Facilitate Narcotics Distribution on July 2, 2005

20. On or about July 2, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and F. ZENDEJAS knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Eighteen

Use of a Communication Facility to Facilitate Narcotics Distribution on July 4, 2005

21. On or about July 4, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and DELA CRUZ knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Nineteen

22. The defendants named below committed the following acts involving attempted murder, either one of which constitutes the commission of Racketeering Act Nineteen:

a. Conspiracy to Murder DN

Beginning on a date unknown to the Grand Jury, and continuing until July 16, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ, FLORES, and others, conspired to kill with malice aforethought DN, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182 and 187.

b. Attempted Murder of DN

On or about July 16, 2005, in Los Angeles County, within the Central District of California, defendant FLORES

unlawfully with malice aforethought did aid, abet, advise, encourage and otherwise willfully participate in the attempted murder of DN, in violation of California Penal Code Sections 21a, 31, 664, and 187.

Racketeering Act Twenty

23. The defendants named below committed the following acts involving attempted murder, either one of which constitutes the commission of Racketeering Act Twenty:

a. Conspiracy to Murder TW and DP

Beginning on a date unknown to the Grand Jury and continuing until July 22, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and M. HERNANDEZ, and others, conspired to kill with malice aforethought TW and DP, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182 and 187.

b. Attempted Murder of TW and DP

On or about July 22, 2005, in Los Angeles County, within the Central District of California, defendants A. HERNANDEZ and M. HERNANDEZ unlawfully with malice aforethought did aid, abet, advise, encourage and otherwise willfully participate in the attempted murder of TW and DP, in violation of California Penal Code Sections 21a, 31, 664, and 187.

Racketeering Act Twenty-One

24. The defendants named below committed the following acts involving attempted murder, either one of which constitutes the

commission of Racketeering Act Twenty-One:

a. Conspiracy to Murder SW

Beginning on a date unknown to the Grand Jury, and continuing until August 2, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ, M. HERNANDEZ, FLORES, and others, conspired to kill with malice aforethought SW, and a co-conspirator committed an overt act in furtherance of the conspiracy, in violation of California Penal Code Sections 31, 182, 187 and 189.

b. Attempted Murder of SW

On or about August 2, 2005, in Los Angeles County, within the Central District of California, defendant M. HERNANDEZ unlawfully with malice aforethought did aid, abet, advise, encourage and otherwise willfully participate in the attempted murder of SW, in violation of California Penal Code Sections 21a, 31, 664, and 187.

Racketeering Act Twenty-Two

Use of a Communication Facility to Facilitate Narcotics Distribution on August 4, 2005

25. On or about August 4, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and M. ESTRADA knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation

of Title 21, United States Code, Section 843(b).

Racketeering Act Twenty-Three

Distribution of Cocaine

26. On or about August 17, 2005, in Los Angeles County, within the Central District of California and elsewhere, defendants CRUZ and M. HERNANDEZ knowingly and intentionally distributed at least 500 grams, that is, approximately one kilogram, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

Racketeering Act Twenty-Four

Distribution of Cocaine

27. On or about August 25, 2005, in Los Angeles County, within the Central District of California, defendants CRUZ and A. HERNANDEZ knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine, that is, approximately 125.1 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Racketeering Act Twenty-Five

Money Laundering

28. On August 25, 2005, in Los Angeles County, within the Central District of California, defendant CRUZ knowingly conducted, and attempted to conduct, a financial transaction

affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1), (A)(I).

Racketeering Act Twenty-Six

29. The defendants named below committed the following acts involving narcotics trafficking, either of which constitute the commission of Racketeering Act Twenty-Six.

a. Possession with Intent to Distribute Cocaine

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendants CRUZ and A. HERNANDEZ knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 140.4 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

b. Possession with Intent to Distribute Cocaine Base in the Form of Crack

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendants CRUZ and A. HERNANDEZ knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 397.2 grams, of a mixture or substance containing a detectable amount of

cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

c. Possession with Intent to Distribute Methamphetamine

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendants CRUZ and A. HERNANDEZ knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 266.4 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

Racketeering Act Twenty-Seven

Armed Robbery of DV and RL

30. On or about September 6, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant M. HERNANDEZ committed an act involving robbery, namely, the armed robbery of victims DV and RL, in violation of California Penal Code Sections 31 and 211.

Racketeering Act Twenty-Eight

Use of a Communication Facility to Facilitate Narcotics Distribution on November 26, 2005

31. On or about November 26, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ and ORTIZ knowingly and intentionally used a communication facility, namely, a telephone, in causing or

facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Twenty-Nine

Use of a Communication Facility to Facilitate Narcotics Distribution on December 11, 2005

32. On or about December 11, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ and GUTIERREZ knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Thirty

Extortion

33. On or about December 15, 2005, in Los Angeles County, within the Central District of California, defendants MEDINA and G. HERNANDEZ, by use of threats and fear, intentionally and unlawfully extorted, and attempted to extort, money from an individual, in violation of California Penal Code Sections 518-20.

Racketeering Act Thirty-One

34. The defendants named below committed the following acts involving narcotics trafficking, either of which constitute the commission of Racketeering Act Thirty-One.

a. Possession with Intent to Distribute Cocaine

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 731.6 grams, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

b. Possession with Intent to Distribute Cocaine Base in the Form of Crack

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 210.3 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

c. Possession with Intent to Distribute Methamphetamine

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to

distribute at least 5 grams, that is, approximately 36.8 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

Racketeering Act Thirty-Two

Use of a Communication Facility to Facilitate Narcotics Distribution on March 2, 2006

35. On or about March 2, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ and AGUILAR knowingly and intentionally used a communication facility, namely, a telephone, in causing or facilitating the commission of acts constituting a felony under the Controlled Substances Act, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), all in violation of Title 21, United States Code, Section 843(b).

Racketeering Act Thirty-Three

36. The defendants named below committed the following acts involving narcotics trafficking, either of which constitute the commission of Racketeering Act Thirty Three.

a. Possession with Intent to Distribute Cocaine

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 102.3 grams of cocaine, a

schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

b. Possession with Intent to Distribute Cocaine Base in the Form of Crack

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 7.79 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

c. Possession with Intent to Distribute Methamphetamine

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants VASQUEZ and MONTOYA knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 12.0 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT TWO

[18 U.S.C. § 1962(d)

1. Paragraphs One through Nine of the Introductory Allegations of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning on a date unknown to the Grand Jury, and continuing until September 27, 2007, in the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, MEDINA, G. HERNANDEZ, CASTILLO, AGUILAR, and M. ESTRADA, and others, being persons employed by and associated with the F13 criminal enterprise described in Paragraphs One through Nine of the Introductory Allegations of this indictment, which constitutes an "enterprise," as defined in Title 18, United States Code, Section 1961(4), which enterprise affected interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts involving murder, attempted murder, and conspiracy to commit murder, in violation California Penal Code Sections 21a, 31, 664, 182 and 187; extortion and conspiracy to extort, in violation of California Penal Code Sections 31, 182 and 518-20; distribution

of controlled substances, and conspiracy to distribute controlled substances, including cocaine, cocaine base in the form of crack, and methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846; money laundering, in violation of Title 18, United States Code, Section 1956, and robbery and attempted robbery, in violation of California Penal Code Sections 31 and 211. It was a further part of the conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

A. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. Unindicted coconspirator AC would instruct F13 members concerning the rules of the F13 Gang's racketeering activities.

2. Defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, CASTILLO and others would direct the drug trafficking and other racketeering activities of the F13 Gang.

3. Defendants VASQUEZ, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ and others would supply F13 Gang members with large quantities of cocaine, cocaine base in the form of crack, and methamphetamine.

4. Defendants VASQUEZ, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, AGUILAR, M. ESTRADA and others would create drug distribution centers in the communities controlled by the F13 Gang.

5. Defendants M. HERNANDEZ, MONTOYA, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, AGUILAR, M. ESTRADA and others would work at these drug distribution residences and sell distributable amounts of cocaine, cocaine base in the form of crack, and methamphetamine.

6. Defendants FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, F. ZENDEJAS, J. ZENDEJAS, CASTILLO, AGUILAR, M. ESTRADA and others would receive and distribute large quantities of cocaine, cocaine base in the form of crack, and methamphetamine on behalf of the F13 Gang.

7. Defendants M. HERNANDEZ, M. ESTRADA, and other F13 Gang members would commit robberies in order to enrich themselves and the F13 Gang.

8. Defendants VASQUEZ, OLIVA, RINCON, AGUILAR and others would attempt to contact unindicted coconspirator AC in order to resolve disputes among F13 Gang members.

9. Defendants VASQUEZ, RINCON, OLIVA and others would permit F13 Gang members and other drug trafficking organizations to traffic narcotics in F13 Gang territory in return for a percentage of the narcotics proceeds that were sold in areas controlled by the F13 Gang.

10. Defendants MEDINA, G. HERNANDEZ and others would extort money from prostitutes and drug dealers who conducted their illegal activities in areas controlled by the F13 Gang.

11. Defendant VILLEGAS would purchase firearms for F13 Gang members and transport the firearms to Los Angeles, California.

12. Defendant VILLEGAS would purchase methamphetamine from F13 Gang members and transport the methamphetamine to Las Vegas,

1. On April 22, 1996, defendant M. ESTRADA and an unindicted F13 Gang member robbed victim JM at 640 Hill Street, Los Angeles, California.

2. On August 8, 1996, defendant M. ESTRADA and two other unindicted F13 Gang members shot at victims IA and RL and attempted to rob the two armed security guards who were delivering gold to a client at 640 Hill Street, in Los Angeles, California.

3. On October 29, 1996, defendant M. ESTRADA and an unindicted F13 Gang member robbed victims AN and MG of gold as they walked on 6th Street, in Los Angeles, California.

4. On October 29, 1996, defendant M. ESTRADA hid in a parking lot located at 725 Grand Avenue, in Los Angeles, California, after he robbed victims AN and MG.

5. On November 18, 1996, defendant GUTIERREZ distributed approximately .24 grams of crack cocaine at 1409 74th Street, in Los Angeles, California.

6. On February 24, 1998, defendant ORTIZ possessed approximately 46.8 grams of crack cocaine at 1130 71st Street, in Los Angeles, California.

7. On September 3, 1998, defendant AGUILAR possessed approximately 8.02 grams of crack cocaine at 318 63rd Street, in Los Angeles, California.

8. On April 21, 2000, defendant DELA CRUZ possessed approximately .8 grams of crack cocaine at 1611 66th Street, in Los Angeles, California.

9. On November 23, 2001, defendant PANTOJA possessed approximately 4.4 grams of crack cocaine at 1817 67th Street, in

Los Angeles, California.

10. On or before June 24, 2004, unindicted coconspirator AC wrote and sent a set of rules and regulations for all F13 Gang members to follow.

11. On or before August 12, 2004, unindicted coconspirator AC instructed all F13 Gang members to follow the rules and regulations that he had authored.

12. On or before August 12, 2004, unindicted coconspirator AC ordered that each F13 Gang clique elect a president and vice-president and inform each F13 Gang member of unindicted coconspirator AC's orders.

13. On or before August 12, 2004, unindicted coconspirator AC ordered all F13 Gang members to help each other when they engaged in battles with rival African-American street gangs.

14. On or before August 12, 2004, unindicted coconspirator AC ordered that F13 Gang members needed permission to collect proceeds from unlawful activity committed within the F13 Gang territory.

15. On or before August 12, 2004, unindicted coconspirator AC instructed F13 Gang members that narcotics traffickers would pay a portion of their narcotics trafficking profits in the form of a tax to F13 Gang leaders.

16. On or before August 12, 2004, unindicted coconspirator AC encouraged F13 Gang members, who were trafficking in drugs, to assist other F13 Gang members in getting started in drug trafficking.

17. On or before August 12, 2004, unindicted coconspirator AC appointed defendant RINCON and an unindicted coconspirator to

implement the written rules authored by unindicted coconspirator AC.

18. On or before August 12, 2004, unindicted coconspirator AC told an unindicted coconspirator that the F13 Gang rules would be mailed to him.

19. On or before August 12, 2004, unindicted coconspirator AC told an unindicted coconspirator to set up a mail drop so that unindicted coconspirator AC could communicate with him.

20. On or before August 12, 2004, unindicted coconspirator AC wrote an unindicted coconspirator that he needed to appoint several F13 Gang members who would be in charge of taxing illegal activity, including drug trafficking, that occurred on Pacific Boulevard, in Huntington Park, California, and other territory controlled by the F13 Gang.

21. On or before August 17, 2004, unindicted coconspirator AC wrote to an unindicted coconspirator to make sure that all the F13 cliques were participating in the assaults of African-American rival gang members.

22. On or before August 17, 2004, unindicted coconspirator AC wrote to an unindicted coconspirator informing him that four smaller street gangs had until January 1, 2005 to join the F13 Gang.

23. On or before August 17, 2004, unindicted coconspirator AC informed an unindicted coconspirator that defendant RINCON would assist the unindicted coconspirator to enforce the F13 Gang rules.

24. On November 21, 2004, an unindicted coconspirator shot and killed an African-American male at 1358 Firestone Boulevard,

Los Angeles, California.

25. On January 20, 2005, an unknown, unindicted coconspirator killed F13 Gang member PV at 1311 Firestone Boulevard, in Los Angeles, California, during a drug transaction.

26. On January 26, 2005, an African-American male, while standing near a bus stop at 1100 Florence Boulevard, Los Angeles, California, was shot at least four times and killed by an unknown coconspirator riding in defendant N. GONZALEZ' white Ford Expedition.

27. On February 18, 2005, defendant CRUZ placed a plastic bag and rubber gloves containing powder cocaine residue in a blue recycling container located at 10250 San Miguel Avenue, in South Gate, California (the "San Miguel residence").

28. On March 14, 2005, defendant N. GONZALEZ, driving a white Ford Expedition, license plate number 4HTY700, was in possession of a loaded 9 millimeter semi-automatic handgun.

29. On April 2, 2005, defendant N. GONZALEZ asked an unindicted coconspirator to pick him up and take him to the garage of 6419½ Miramonte Boulevard, in Los Angeles, California (the "Miramonte residence") in order to hide his firearms.

30. On April 4, 2005, defendant N. GONZALEZ told defendant MARTINEZ that he would buy all of defendant MARTINEZ' guns if they were good quality.

31. On April 4, 2005, defendant N. GONZALEZ told defendant MARTINEZ that he would inform other F13 Gang members to see if they wanted to purchase firearms from defendant MARTINEZ.

32. On April 4, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he was going to inspect an assault rifle with a

90 round drum clip.

33. On April 4, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that the seller wanted $2,000 for the assault rifle.

34. On April 4, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that most AR-15 assault rifles cost $1,500 and defendant A. HERNANDEZ offered to pay half that amount for the AR-15.

35. On April 4, 2005, defendant MARTINEZ told defendant N. GONZALEZ that he was going to drop off his girlfriend and meet with defendant N. GONZALEZ at 1132-1134 71st Street, in Los Angeles, California (the "71st Street residence").

36. On April 4, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that defendant A. HERNANDEZ wanted to obtain guns.

37. On April 4, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that defendant MARTINEZ had fully loaded M16 assault rifles with pistol grips and 90 round clips.

38. On April 4, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ to purchase the M16 assault rifles.

39. On April 4, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that defendant MARTINEZ had a 9 millimeter handgun, a Glock pistol, and two clips for sale.

40. On April 4, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that they had to wait to purchase the AR-15 assault rifle until defendant MARTINEZ completed a firearms sale to an unknown individual.

41. On April 4, 2005, defendant MARTINEZ told defendant N. GONZALEZ that he had a Sig Sauer pistol for sale.

42. On April 6, 2005, defendant A. HERNANDEZ informed

defendant N. GONZALEZ that an F13 Gang member from their Jokers clique was being harassed by another F13 clique.

43. On April 6, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that African-American rival gang members were congregated on 89th Street, in Los Angeles, California.

44. On April 6, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that there was too much police activity to shoot at rival African-American gang members.

45. On April 7, 2005, an unindicted coconspirator told defendant J. GONZALEZ that he was on the phone with PV when PV was shot to death.

46. On April 11, 2005, defendant MONTOYA asked defendant N. GONZALEZ if he had a gun.

47. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that they needed to shoot two rival 18th Street Gang members who were in a red truck.

48. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ to head over to where defendant N. GONZALEZ was at in order to find the red truck and shoot at the rival gang members.

49. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that one of the individuals in the car had tattoos of a "1" and an "8" on his arm, and a Mexican flag on his head.

50. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that he wanted to confront and shoot the rival gang members in the red truck in order to let them know they could not be in their neighborhood.

51. On April 11, 2005, an unindicted coconspirator told

defendant N. GONZALEZ that he saw the red truck and defendant N. GONZALEZ told the unindicted coconspirator to shoot the rival gang members in the red truck.

52. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ to bring a gun to defendant N. GONZALEZ' location because the individuals in the red truck were still present.

53. On April 11, 2005, defendants N. GONZALEZ and A. HERNANDEZ discussed taking defendant N. GONZALEZ' vehicle to commit the shooting.

54. On April 11, 2005, defendant N. GONZALEZ told an unindicted coconspirator that defendant A. HERNANDEZ was coming from defendant CRUZ' residence and bringing with him a gun in order to shoot at the rival gang members who were in the red truck.

55. On April 11, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that the red truck had made a U-turn and was not in sight.

56. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that he and two other unindicted coconspirator were trying to find the red truck.

57. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that he was following the red truck but was unable to keep up because he was stopped at a red light.

58. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that the rival gang members in the red truck were drug dealers with money.

59. On April 11, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he needed to use his gun and was going

to go to an individual's house who lived on Flower Street, in Los Angeles, California (the "Flower Street residence"), to see if he was at home in order to shoot at him.

60. On April 11, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that the door to the Flower Street residence was open and he was going to park and wait near the residence to see if he saw the individual he wanted to shoot.

61. On April 11, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he was going to shoot the individual in front of the Flower Street residence.

62. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that he saw the police in the area.

63. On April 11, 2005, defendant N. GONZALEZ told defendant A. HERNANDEZ that he was waiting for defendant A. HERNANDEZ near the Flower Street residence.

64. On April 11, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he was halfway to the front door of the Flower Street residence when he called the individual's name, but a woman answered the door.

65. On April 11, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he was going to commit a home invasion robbery of the Flower Street residence because the individual was not present, but he did not have a mask.

66. On April 11, 2005, defendant MONTOYA asked defendant N. GONZALEZ for permission to shoot at rival gang members, but defendant N. GONZALEZ told him that he could do so later in the evening.

67. On April 15, 2005, defendant PANTOJA asked defendant N.

GONZALEZ to provide him with seven grams of powder cocaine.

68. On April 15, 2005, an unindicted coconspirator asked defendant J. GONZALEZ for 3.5 grams of powder cocaine.

69. On April 17, 2005, defendant N. GONZALEZ told defendant M. HERNANDEZ that he had two guns with him but that he needed more handguns.

70. On April 19, 2005, defendant N. GONZALEZ told defendant MONTOYA that the price of fourteen grams of powder cocaine was $250.

71. On April 19, 2005, defendant M. HERNANDEZ told defendant N. GONZALEZ that an unindicted coconspirator had three guns for sale.

72. On April 26, 2005, defendant N. GONZALEZ asked defendant M. HERNANDEZ to borrow one of his guns so that a young F13 Gang member could use it.

73. On April 27, 2005, an unindicted coconspirator told defendant J. GONZALEZ that he would bring a copy of a search warrant in order to convince defendant J. GONZALEZ that the unindicted coconspirator was not cooperating with the police.

74. On April 27, 2005, defendant J. GONZALEZ told an unindicted coconspirator that he was talking too much about the murder of F13 Gang member PV.

75. On May 8, 2005, defendant N. GONZALEZ told an unindicted coconspirator that the drug distribution residence at the 71st Street residence would not open for another 10 minutes.

76. On May 10, 2005, defendants N. GONZALEZ and J. GONZALEZ discussed the location where they were storing the money they collected from the sale of drugs.

77. On May 10, 2005, defendant N. GONZALEZ told an unindicted coconspirator that defendant J. GONZALEZ had been arrested at the 71st Street residence.

78. On May 10, 2005, an unindicted coconspirator told defendant N. GONZALEZ that he had seen some crack cocaine, but most of the drugs located at the 71st Street residence was powder cocaine.

79. On May 10, 2005, an unindicted conspirator told defendant N. GONZALEZ that the crack cocaine she had just purchased was bad quality, and defendant N. GONZALEZ agreed to allow her to exchange the crack cocaine.

80. On May 10, 2005, defendant ANDRADE, who was in the vicinity of the 71st Street residence, informed defendant N. GONZALEZ concerning the search of the 71st Street residence by law enforcement.

81. On May 10, 2005, at the 71st Street residence, defendants N. GONZALEZ and J. GONZALEZ possessed for sale approximately 224.3 grams of powder cocaine, approximately 228.7 grams of crack cocaine, and 50.5 grams of actual methamphetamine.

82. On May 11, 2005, defendant N. GONZALEZ informed defendant ANDRADE that a new drug distribution residence would be located on 1305 E. 69th Street, in Los Angeles, California (the "69th Street residence").

83. On May 11, 2005, defendant ANDRADE agreed to assist defendant N. GONZALEZ in operating the drug distribution residence on 69th Street.

84. On May 11, 2005, defendant N. GONZALEZ informed defendant ANDRADE that the drug distribution residence on 69th

Street would be open between 12 noon and 12 midnight.

85. On May 11, 2005, defendant N. GONZALEZ told defendant ANDRADE to place the crack cocaine that had been separated for distribution in a sandwich bag.

86. On May 11, 2005, defendant N. GONZALEZ told defendant ANDRADE to remind their customers that the 69th Street residence was open for business between noon and midnight.

87. On May 11, 2005, defendant N. GONZALEZ told defendant ANDRADE and an unindicted coconspirator that a customer wanted 84 grams of crack cocaine and 42 grams of powder cocaine.

88. On May 12, 2005, defendant N. GONZALEZ told defendant MONTOYA that 7 grams of crack cocaine cost $150 and 7 grams of methamphetamine cost $125.

89. On May 12, 2005, defendant N. GONZALEZ told defendant ANDRADE that defendant PANTOJA needed 7 grams of crack cocaine and 7 grams of methamphetamine.

90. On May 13, 2005, defendants N. GONZALEZ and ANDRADE sold an unindicted coconspirator approximately one-quarter pound of methamphetamine.

91. On May 15, 2005, defendant N. GONZALEZ told defendant PANTOJA that an African-American male was standing on 52nd Street and Miramonte Avenue, in Los Angeles, California, and defendant PANTOJA agreed to bring a .45 caliber handgun to assault the individual.

92. On May 15, 2005, defendant N. GONZALEZ told defendant PANTOJA that he had purchased an AR-15 assault rifle.

93. On May 16, 2005, defendant N. GONZALEZ told defendant PANTOJA that he was manufacturing crack cocaine, and defendant

PANTOJA asked defendant N. GONZALEZ for 7 grams of crack cocaine and 7 grams of methamphetamine.

94. On May 19, 2005, defendant ANDRADE asked defendant N. GONZALEZ to bring a scale to the 69th Street residence.

95. On May 20, 2005, defendant N. GONZALEZ told defendant ANDRADE that he would pick up the scale and bring it back to the Miramonte residence.

96. On May 23, 2005, defendant N. GONZALEZ told defendant MONTOYA that he needed the firearm that defendant MONTOYA was going to obtain from an unindicted coconspirator.

97. On May 26, 2005, in the garage of the Miramonte residence, defendants N. GONZALEZ and ANDRADE possessed for sale approximately 101.3 grams of powder cocaine, 154.7 grams of crack cocaine, and 6.8 grams of actual methamphetamine.

98. Prior to May 25, 2005, defendant MARTINEZ sold defendants N. GONZALEZ and A. HERNANDEZ a DPMS .223 caliber rifle, model A-15.

99. On May 26, 2005, in the garage of the Miramonte residence, defendant N. GONZALEZ possessed a DPMS .223 caliber rifle, model A-15; a Norinco .556 caliber rifle; two Marlin .22 caliber rifles; and an American Derringer .45 caliber pistol.

100. On May 28, 2005, defendant ANDRADE told defendant N. GONZALEZ that he was at the 69th Street residence.

101. On June 1, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he was following a Cadillac Escalade, whose driver looked like a rival gang member, to see where it was going, and defendant N. GONZALEZ responded that he was on his way to meet him.

102. On June 1, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he had a gun available to use against a rival member in the Cadillac Escalade.

103. On June 1, 2005, defendant A. HERNANDEZ told defendant N. GONZALEZ that he saw some rival gang members at a fast food restaurant and wanted to shoot them.

104. On June 14, 2005, F13 Gang member VB was shot and killed by F13 Gang member JI without permission from F13 shot callers.

105. On June 14, 2005, defendant A. HERNANDEZ informed defendant OLIVA that defendants J. GONZALEZ and N. GONZALEZ were in custody and that defendant A. HERNANDEZ was going to help run the drug trafficking activities at the 69th Street residence.

106. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that he spoke with defendant J. GONZALEZ' girlfriend and told her that he would help them continue operating the drug distribution location at the 69th Street residence.

107. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that an unindicted coconspirator would bring firearms with silencers to sell to F13 Gang members.

108. On June 14, 2005, defendant A. HERNANDEZ told defendant CRUZ that there were a lot of law enforcement officers on Gage and Converse Avenues, in Los Angeles, California.

109. On June 14, 2005, defendant A. HERNANDEZ told defendant CRUZ that he was calling defendant OLIVA.

110. On June 14, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that defendant OLIVA stated that the problems associated with the murder of F13 Gang member VB needed to be

resolved quickly.

111. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that he and defendant RINCON wanted to meet with defendant A. HERNANDEZ to discuss the shooting death of F13 Gang member VB.

112. On June 14, 2005, defendants OLIVA and A. HERNANDEZ agreed to meet at defendant A. HERNANDEZ' mother's house.

113. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that he had spoken to representatives of other F13 cliques concerning the murder of F13 Gang member VB.

114. On June 14, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that he was present when F13 Gang member JI shot and killed F13 Gang member VB.

115. On June 14, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that the fallout from the killing of F13 Gang member VB would fall on every member of their clique.

116. On June 14, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that defendant OLIVA was waiting for them to meet to discuss the shooting of F13 Gang member VB.

117. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that he was waiting for representatives from the other F13 Gang cliques to arrive.

118. On June 14, 2005, defendant OLIVA told defendant A. HERNANDEZ that F13 Gang member JI and the unindicted coconspirator who was with JI when he killed F13 Gang member VB would be the only two F13 Gang members disciplined for their actions.

119. On June 16, 2005, defendant OLIVA told defendant A.

HERNANDEZ that defendant RINCON was aware of the murder of F13 Gang member VB.

120. On June 16, 2005, defendants OLIVA and defendant A. HERNANDEZ agreed that F13 Gang member JI needed to be killed for killing fellow F13 Gang member VB.

121. On June 16, 2005, defendant OLIVA told defendant A. HERNANDEZ that he was going to talk to defendant RINCON and an unindicted coconspirator to make a determination concerning the fate of F13 Gang member JI.

122. On June 16, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that they needed to manufacture crack cocaine.

123. On June 16, 2005, defendant J. ZENDEJAS agreed to sell defendant A. HERNANDEZ one pound of methamphetamine for $6,250.

124. On June 17, 2005, defendant OLIVA told defendant A. HERNANDEZ that they were ready to discipline F13 Gang member JI for the shooting death of F13 Gang member VB.

125. On June 17, 2005, defendant OLIVA told defendant A. HERNANDEZ that F13 Gang member JI needed to be killed.

126. On June 17, 2005, defendant A. HERNANDEZ asked an unindicted coconspirator to give him a gun and to pick up defendant M. HERNANDEZ.

127. On June 17, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that he had two magazine clips for a gun and was waiting for defendant A. HERNANDEZ.

128. On June 18, 2005, unknown and unindicted coconspirators shot and killed F13 Gang member JI.

129. On June 20, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that he was ready to discipline the

unindicted coconspirator.

130. On June 21, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that they were going to discipline a second unindicted coconspirator who was with F13 Gang member JI when he shot and killed F13 Gang member VB.

131. On June 21, 2005, defendant A. HERNANDEZ told an unindicted coconspirator to bring a firearm to the location where they were going to discipline an unindicted coconspirator who was with F13 Gang member JI when he shot and killed F13 Gang member VB.

132. On June 21, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that defendants A. HERNANDEZ, M. HERNANDEZ and PANTOJA had assaulted an unindicted coconspirator who was with F13 Gang member JI when he shot and killed F13 Gang member VB.

133. On June 23, 2005, defendant F. ZENDEJAS asked defendant A. HERNANDEZ for crack cocaine.

134. On June 23, 2005, defendant J. ZENDEJAS agreed to buy 84 grams of crack cocaine from defendant A. HERNANDEZ.

135. On June 24, 2005, defendant F. ZENDEJAS asked defendant A. HERNANDEZ for crack cocaine.

136. On June 24, 2005, defendant F. ZENDEJAS asked defendant A. HERNANDEZ for powder cocaine.

137. On June 24, 2005, defendant MONTOYA asked defendant A. HERNANDEZ if he had 28 grams of methamphetamine for sale to individuals that were in a drug rehabilitation center with defendant MONTOYA.

138. On June 24, 2005, defendant M. HERNANDEZ told defendant

A. HERNANDEZ that after he finished selling drugs for the day, he was going to look for rival African-American gang members to shoot.

139. On June 24, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that he was going to send $300 to defendant J. GONZALEZ who was in jail.

140. On June 24, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that he and defendant CRUZ were trying to post bond for defendant N. GONZALEZ who was in jail.

141. On June 24, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that defendant OLIVA did not have the authority to tax drug dealers.

142. On June 24, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that if defendant OLIVA attempted to tax defendant A. HERNANDEZ, he should tell defendant OLIVA that he gave the tax money to unindicted coconspirator AC's relatives.

143. On June 24, 2005, defendant M. HERNANDEZ, while driving in a vehicle on West 68th Street, Los Angeles, California, shouted to victim RB that he was in F13 territory.

144. On June 24, 2005, defendant M. HERNANDEZ fired at least three rounds from a handgun striking victim RB.

145. On June 24, 2005, defendant M. HERNANDEZ asked defendant A. HERNANDEZ to have an unindicted coconspirator pick up his vehicle because he had just shot someone.

146. On June 24, 2005, defendant A. HERNANDEZ asked if the person who defendant M. HERNANDEZ shot was African-American and defendant M. HERNANDEZ agreed.

147. On June 24, 2005, defendant A. HERNANDEZ told an

unindicted coconspirator that defendant M. HERNANDEZ had shot another African-American.

148. On June 24, 2005, defendant A. HERNANDEZ told an unindicted coconspirator to pick up defendant M. HERNANDEZ' vehicle.

149. On June 27, 2005, defendant F. ZENDEJAS asked defendant A. HERNANDEZ for 14 grams of powder cocaine.

150. On June 27, 2005, defendant J. ZENDEJAS asked defendant A. HERNANDEZ for powder cocaine and crack cocaine.

151. On June 27, 2005, defendant M. HERNANDEZ told defendant A. HERNANDEZ that he needed to purchase one ounce of powder cocaine.

152. On June 27, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that an ounce of powder cocaine would cost $450.

153. On June 28, 2005, defendant F. ZENDEJAS asked defendant A. HERNANDEZ for 28 grams of crack cocaine.

154. On July 1, 2005, defendant CRUZ told an unindicted coconspirator that defendant VASQUEZ needed to talk to the unindicted coconspirator who was with F13 Gang member JI when he shot and killed F13 Gang member VB in order to find out what happened to JI.

155. On July 1, 2005, defendant A. HERNANDEZ told defendant F. ZENDEJAS that he would deliver seven grams of crack cocaine and seven grams of powder cocaine.

156. On July 2, 2005, defendant A. HERNANDEZ described what defendant RINCON looked like to an unindicted coconspirator.

157. On July 4, 2005, defendant A. HERNANDEZ told defendant DELA CRUZ that he would deliver approximately 112 grams of crack

cocaine to defendant DELA CRUZ' mother.

158. On July 4, 2005, defendant A. HERNANDEZ told defendant DELA CRUZ that 14 grams of methamphetamine would cost approximately $260.

159. On July 4, 2005, defendant A. HERNANDEZ told defendant DELA CRUZ that the 14 grams of methamphetamine would be delivered in approximately 15 minutes.

160. On July 7, 2005, defendant M. ESTRADA told defendant A. HERNANDEZ to send him seven grams of crack cocaine and defendant M. ESTRADA also asked for methamphetamine.

161. On July 7, 2005, defendant A. HERNANDEZ gave defendant M. ESTRADA seven grams of methamphetamine.

162. On July 8, 2005, defendant OLIVA told defendant A. HERNANDEZ that the President and Vice-President of each F13 Gang clique needed to attend an F13 Gang meeting in La Mirada, California, and defendant OLIVA would give defendant A. HERNANDEZ directions to get to the location.

163. On July 8, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that he was going to an F13 Gang meeting.

164. On July 8, 2005, defendant A. HERNANDEZ asked defendant M. HERNANDEZ if he wanted to go to the F13 Gang meeting.

165. On July 16, 2005, defendant A. HERNANDEZ told defendant CRUZ that rival gang members had shot at F13 Gang members at 80th Street and Parmalee Avenue, in Los Angeles, California.

166. On July 16, 2005, defendants A. HERNANDEZ and FLORES, and two unindicted coconspirators, drove in two separate vehicles to the area of Nadeau Street and Parmalee Avenue, in Los Angeles,

California, and defendant FLORES shot victim DN, an African-American male, who was standing on the sidewalk of Parmalee Avenue, between 78th Street and Nadeau Streets, in Los Angeles, California.

167. On July 16, 2005, defendant A. HERNANDEZ told defendant CRUZ that defendant FLORES shot an African-American at Nadeau Street and Parmalee Avenue, in Los Angeles, California.

168. On July 17, 2005, defendant MARTINEZ was in possession of a 9 millimeter handgun.

169. On July 17, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that he would bring defendant A. HERNANDEZ a sample of methamphetamine.

170. On July 17, 2005, defendant A. HERNANDEZ told defendant FLORES that an unindicted coconspirator would be meeting with him.

171. On July 17, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ about the shooting at Nadeau Street and Parmalee Avenue, in Los Angeles, California.

172. On July 18, 2005, unindicted coconspirators shouted derogatory statement to rival gang members, fired between 7 to 10 rounds, and hit victim SR, a rival gang member, on 87th Place, in Los Angeles, California.

173. On July 18, 2005, unindicted coconspirators shot and struck victim FT.

174. On July 18, 2005, defendant FLORES informed defendant A. HERNANDEZ that members from another F13 clique were upset at defendant FLORES.

175. On July 18, 2005, defendant A. HERNANDEZ told defendant

FLORES that he spoke with representatives of other F13 cliques and advised them that defendant FLORES was shooting others on behalf of the F13 Gang.

176. On July 18, 2005, defendant FLORES told defendant HERNANDEZ that gang members on 84th Street were challenging him and defendant FLORES was ready to assault rival gang members.

177. On July 18, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that he was going to start shooting the gang members whom defendant FLORES had identified.

178. On July 18, 2005, defendant A. HERNANDEZ told an unindicted coconspirator to leave for defendant A. HERNANDEZ' location.

179. On July 18, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that he no longer needed the unindicted coconspirator to assist him in assaulting rival gang members.

180. On July 19, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that defendant CASTILLO was not paying for methamphetamine that had been supplied to him.

181. On July 19, 2005, defendant A. HERNANDEZ told defendant CASTILLO that he wanted the money for the methamphetamine he provided to defendant CASTILLO.

182. On July 20, 2005, defendant PANTOJA asked defendant A. HERNANDEZ if he had 14 grams of methamphetamine.

183. On July 21, 2005, defendant FLORES told defendant A. HERNANDEZ that there were a lot of rival gang members outside on Maie Street and 92nd Street, in Los Angeles, California.

184. On July 21, 2005, defendant FLORES told defendant A. HERNANDEZ that he saw an individual he was going to shoot on 92nd

Street.

185. On July 22, 2005, defendant FLORES told defendant A. HERNANDEZ that an African-American had been shot on 81st Street.

186. On July 22, 2005, defendant FLORES told defendant A. HERNANDEZ that he supplied an unindicted coconspirator with approximately 28 grams of methamphetamine.

187. On July 22, 2005, defendant DELA CRUZ asked defendant A. HERNANDEZ to have an unindicted coconspirator deliver 224 grams of crack cocaine to him.

188. On July 22, 2005, defendants A. HERNANDEZ and M. HERNANDEZ shot at victims TW and DP on the 8200 block of Miramonte Avenue, in Los Angeles, California.

189. On July 23, 2005, defendant PANTOJA told defendant A. HERNANDEZ that a murder that took place near his residence the night before was committed by two African-American individuals.

190. On July 23, 2005, defendant A. HERNANDEZ told defendant FLORES to keep shooting at rival African-American gang members.

191. On July 23, 2005, defendant A. HERNANDEZ told defendant FLORES that defendant M. HERNANDEZ had shot an African-American male on 85th Street, in Los Angeles, California.

192. On July 23, 2005, defendant A. HERNANDEZ told defendant FLORES that F13 Gang members must be united in shooting at rival African-American gang members and defendant A. HERNANDEZ wanted to talk to F13 leaders to tell them that other F13 Gang members needed to commit shootings as well.

193. On July 23, 2005, defendant OLIVA told defendant A. HERNANDEZ that he and defendant RINCON were patrolling the neighborhood.

194. On July 23, 2005, defendant A. HERNANDEZ informed defendant OLIVA about the shooting incidents involving F13 Gang members and members of an African-American gang.

195. On July 23, 2005, defendant A. HERNANDEZ asked defendant OLIVA to supply him with more guns.

196. On July 23, 2005, defendant A. HERNANDEZ asked defendant OLIVA to order more F13 Gang members to assist in shooting African-American gang members.

197. On July 23, 2005, defendant OLIVA told defendant A. HERNANDEZ that he spoke with F13 Gang members and instructed them to shoot at African-American gang members.

198. On July 23, 2005, defendant A. HERNANDEZ told defendant FLORES that he and an unknown coconspirator were going to shoot at African-Americans.

199. On July 23, 2005, defendant FLORES told defendant A. HERNANDEZ that they were going to shoot at African-Americans the day before, but defendant FLORES let an unknown coconspirator borrow his gun.

200. On July 24, 2005, defendant PANTOJA asked defendant A. HERNANDEZ for 28 grams of methamphetamine.

201. On July 25, 2005, defendant A. HERNANDEZ told defendant PANTOJA that he and defendant M. HERNANDEZ shot at African-American gang members at 85th Street and Miramonte Avenue, in Los Angeles, California.

202. On July 25, 2005, defendant PANTOJA told defendant A. HERNANDEZ that the random shooting attacks on Hispanic children by African-American gang members were racially motivated.

203. On July 25, 2005, defendant PANTOJA told defendant A.

HERNANDEZ that he knew how to manufacture methamphetamine into crystalline pieces.

204. On July 25, 2005, victim WW, an African-American male, while standing on the south sidewalk of 58th Place, in Los Angeles, California, was shot approximately seven times by unindicted coconspirators.

205. On July 25, 2005, victim VG was inside his yellow colored residence on the 1600 block of 82nd Place, in Los Angeles, California, when defendant FLORES fired 10 rounds into his house.

206. On July 26, 2005, defendant A. HERNANDEZ told defendant FLORES that law enforcement officers were watching them.

207. On July 26, 2005, defendant FLORES told defendant A. HERNANDEZ that he and defendant M. HERNANDEZ had shot another individual last night.

208. On July 26, 2005, defendant A. HERNANDEZ told defendant FLORES that after the shooting, they dropped off the firearm at defendant M. HERNANDEZ' residence and went back to the location of the shooting scene.

209. On July 27, 2005, an unindicted coconspirator asked defendant A. HERNANDEZ if he still owed defendant A. HERNANDEZ for seven grams of methamphetamine.

210. On July 27, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that the person who shot at an F13 Gang member lived in a yellow house and that another F13 Gang member was shot behind Bethune Park.

211. On July 27, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that defendant A. HERNANDEZ and others

had shot at someone on 85th Street, and that defendant FLORES had shot someone at 82nd and Maie Street two days ago.

212. On July 27, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that when he went looking for African-Americans to shoot, only a driver and a shooter were needed.

213. On July 27, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that defendant FLORES was shooting at members of an African-American street gang when they entered F13 territory.

214. On July 27, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that African-American gang members had written derogatory statements about the F13 Gang in F13 Gang territory.

215. On July 27, 2005, defendant FLORES told defendant A. HERNANDEZ that he needed four ounces of powder cocaine.

216. On July 27, 2005, defendant A. HERNANDEZ told defendant FLORES that an unindicted coconspirator had given defendant FLORES 98 grams of crack cocaine.

217. On July 28, 2005, defendant DELA CRUZ told defendant A. HERNANDEZ to bring him 112 grams of crack cocaine and 3.5 grams of methamphetamine.

218. On July 30, 2005, defendant FLORES told defendant A. HERNANDEZ that he was going to go to defendant CRUZ' residence to pick up seven grams of powder cocaine.

219. On August 1, 2005, an unindicted coconspirator told defendant CRUZ that the individuals who shot victim SV on 87th Place, in Los Angeles, California, used a rifle.

220. On August 2, 2005, defendant CRUZ was informed by an

unindicted coconspirator that F13 Gang members had shot at African-American individuals, including victim SV, and killed F13 Gang member JI because he had killed F13 Gang member VB.

221. On August 2, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that potential shooting victims were walking west on Compton Boulevard and Nadeau Street.

222. On August 2, 2005, defendant M. HERNANDEZ told defendant A. HERNANDEZ that he had just fired his gun at victim SW and SW was shot.

223. On August 2, 2005, victim SW was shot by defendant M. HERNANDEZ at the 1600 block of Florence Boulevard, in Los Angeles, California.

224. On August 2, 2005, defendant M. HERNANDEZ told defendant A. HERNANDEZ to pick up a vehicle, located at Slauson Avenue and McKee Street, in Los Angeles, California, which defendant M. HERNANDEZ had used when he shot victim SW.

225. On August 2, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that victim SW had not died.

226. On August 2, 2005, defendant A. HERNANDEZ told defendant M. HERNANDEZ that many more rival gang members needed to be shot, to which defendant M. HERNANDEZ responded by saying that many more rival gang members would be shot.

227. On August 2, 2005, defendant A. HERNANDEZ told defendant M HERNANDEZ that he would pick him up and take him to defendant CRUZ' house in order for defendant M. HERNANDEZ to get another vehicle.

228. On August 2, 2005, defendant A. HERNANDEZ told defendant FLORES to pick up 140 grams of methamphetamine and 28

grams of powder cocaine from defendant CRUZ' residence.

229. On August 2, 2005, defendant M. HERNANDEZ told defendant A. HERNANDEZ that he saw an African-American individual at the post office.

230. On August 2, 2005, defendant A. HERNANDEZ told an unindicted coconspirator to retrieve defendant M. HERNANDEZ' vehicle that he had left at a supermarket parking lot after the shooting of victim SW.

231. On August 4, 2005, defendant M. ESTRADA asked defendant A. HERNANDEZ for 14 grams of crack cocaine and defendants M. ESTRADA and HERNANDEZ discussed providing defendant M. ESTRADA with 28 grams of methamphetamine on a regular basis.

232. On August 4, 2005, defendant M. ESTRADA told defendant A. HERNANDEZ that he knew the leader of a F13 clique in whose territory he was selling drugs.

233. On August 6, 2005, an unindicted coconspirator told defendant CRUZ that an unindicted coconspirator was trying to "tax" part of his drug proceeds.

234. On August 6, 2005, defendant A. HERNANDEZ told an unindicted coconspirator to let a second unindicted coconspirator know that the first unindicted coconspirator was selling drugs on behalf of defendant A. HERNANDEZ and should not be taxed.

235. On August 8, 2005, defendant A. HERNANDEZ asked defendant PANTOJA for guns and defendant PANTOJA told defendant A. HERNANDEZ that he would try and borrow some from other F13 Gang members.

236. On August 10, 2005, an unindicted coconspirator asked defendant CRUZ to borrow his trailer because the F13 Gang member

who shot at an individual on 87th Place was moving to Chicago.

237. On August 10, 2005, defendant A. HERNANDEZ told an unindicted coconspirator that many F13 Gang members were getting shot.

238. On August 10, 2005, an unindicted coconspirator asked defendant A. HERNANDEZ for a gun so he could retaliate against an African-American gang member who had just shot an F13 gang member.

239. On August 10, 2005, an unindicted coconspirator told defendant A. HERNANDEZ that she was present when an F13 Gang member was shot by three African-American rival gang members.

240. On August 10, 2005, defendant CRUZ told an unindicted coconspirator that he needed firearms for his fellow F13 Gang members.

241. On August 10, 2005, an unindicted coconspirator told defendant CRUZ that he had M-1 and Uzi assault rifles available and both were fully loaded.

242. On August 10, 2005, defendant CRUZ told defendant M. HERNANDEZ that the unindicted coconspirator had M-1 and Uzi assault rifles available for defendant M. HERNANDEZ and others to use.

243. On August 17, 2005, defendant M. HERNANDEZ was in possession of approximately $14,000 in narcotic proceeds.

244. On August 25, 2005, an unindicted coconspirator was in possession of approximately 125.1 grams of powder cocaine supplied by defendants CRUZ and A. HERNANDEZ.

245. On August 25, 2005, defendant CRUZ was in possession of approximately $12,400 in narcotics proceeds.

246. On August 30, 2005, at a residence located at 1118 83rd Street, Los Angeles, California, defendants CRUZ and A. HERNANDEZ possessed with intent to distribute approximately 140.4 grams of powder cocaine, approximately 397.2 grams of crack cocaine, and approximately 266.4 grams, of actual methamphetamine.

247. On September 1, 2005, an unindicted coconspirator wrote defendant CASTILLO and asked if unindicted coconspirator AC could use defendant CASTILLO's address to facilitate communication with other gang members.

248. On September 1, 2005, an unindicted coconspirator asked defendant CASTILLO to provide information to other F13 Gang members from unindicted coconspirator AC.

249. On September 6, 2005, defendant M. HERNANDEZ and unindicted coconspirators robbed at gunpoint victims DV and RL while they were walking on Florence Avenue, in Los Angeles, California.

250. On September 6, 2005, defendant M. HERNANDEZ made a derogatory remark about a rival gang as victims DV and RL were being robbed and defendant M. HERNANDEZ attempted to punch victim DV.

251. On September 6, 2005, defendant M. HERNANDEZ told an unindicted coconspirator to kill victim DV.

252. On November 5, 2005, defendant ORTIZ told defendant VASQUEZ that he was released from prison two days ago, that he had been deported, and that he immediately returned to the United States.

253. On November 5, 2005, defendant VASQUEZ told defendant ORTIZ that he could provide him with drugs to sell.

254. On November 7, 2005, defendant CASTILLO wrote to an unindicted coconspirator that he had shot at rival African-American gang members.

255. On November 6, 2005, defendant VASQUEZ offered defendant ORTIZ one ounce of methamphetamine and one ounce of crack cocaine for him to sell.

256. On November 11, 2005, defendant VASQUEZ told an unindicted coconspirator that a second unindicted coconspirator was in trouble with unindicted coconspirator AC because the second unindicted coconspirator was "taxing" drug dealers and others without the authority of unindicted coconspirator AC.

257. On November 13, 2005, defendant AGUILAR told defendant VASQUEZ that defendant CASTILLO was selling six ounces of methamphetamine a week.

258. On November 13, 2005, defendant AGUILAR told defendant VASQUEZ that defendant CASTILLO was not getting along with defendant A. HERNANDEZ.

259. On November 14, 2005, defendant VASQUEZ told defendant PANTOJA that defendant ORTIZ had found a location to sell drugs.

260. On November 14, 2005, defendant ORTIZ told defendant VASQUEZ that the residence he wanted to rent to sell drugs was located at 61st Street and Central Avenue, in Los Angeles, California.

261. On November 15, 2005, defendant ORTIZ told defendant VASQUEZ that the owner of the residence at 61st Street and Central Avenue, in Los Angeles, California, had changed her mind about renting the location to defendant ORTIZ.

262. On November 16, 2005, defendant VASQUEZ told an

unindicted coconspirator that he had written a letter to unindicted coconspirator AC's associate in order to clear up any confusion concerning the unindicted coconspirator's status in the F13 Gang.

263. On November 19, 2005, defendant VASQUEZ informed defendant MONTOYA that he would provide him with 252 grams of methamphetamine to sell with another unindicted coconspirator.

264. On November 20, 2005, defendant DELA CRUZ asked defendant VASQUEZ if he could purchase 14 grams of methamphetamine for his mother.

265. On November 20, 2005, defendant DELA CRUZ told defendant VASQUEZ that he had the money available for the purchase of methamphetamine.

266. On November 22, 2005, defendant DELA CRUZ asked defendant VASQUEZ for 14 grams of methamphetamine.

267. On November 23, 2005, an unindicted coconspirator told defendant VASQUEZ that a second unindicted coconspirator was selling 3.5 grams of methamphetamine for $75 and she was selling it for $120, and could continue to sell methamphetamine at that price.

268. On November 26, 2005, defendant ORTIZ asked defendant VASQUEZ for an ounce of crack cocaine in order to sell it to others.

269. On November 26, 2005, defendant PANTOJA told defendant VASQUEZ that they could purchase a pound of methamphetamine for $7,300.

270. On November 26, 2005, defendants PANTOJA and VASQUEZ discussed getting an unindicted coconspirator to manufacture

methamphetamine.

271. On December 1, 2005, defendant DELA CRUZ told an unindicted coconspirator that he needed 14 grams of methamphetamine.

272. On December 2, 2005, defendant ORTIZ told defendant VASQUEZ that he had customers who were buying 28 grams of methamphetamine at a time.

273. On December 3, 2005, defendant VASQUEZ told an unindicted coconspirator to take a firearm to an F13 Gang member who had gotten into a dispute with a rival gang member.

274. On December 5, 2005, defendant VASQUEZ spoke with unindicted coconspirator AC's associate, an unindicted coconspirator, and informed him that a second unindicted coconspirator would be writing unindicted coconspirator AC in order to explain his actions and determine his status in the F13 Gang.

275. On December 5, 2005, defendant VASQUEZ told an unindicted coconspirator that he had notified unindicted coconspirator AC's associate that the unindicted coconspirator would be writing to him in order to settle the unindicted coconspirator's status in the F13 Gang.

276. On December 10, 2005, defendant VASQUEZ told an unindicted coconspirator that he had spoken to unindicted coconspirator AC's associate and they would contact an the unindicted coconspirator concerning his status in the F13 Gang.

277. On December 11, 2005, defendant VASQUEZ told defendant GUTIERREZ to take 28 grams of crack cocaine to defendant ORTIZ.

278. On December 12, 2005, defendant VASQUEZ told defendant

DELA CRUZ that he would let defendant DELA CRUZ know when defendant VASQUEZ was in possession of methamphetamine.

279. On December 12, 2005, defendant ORTIZ told defendant VASQUEZ that he could purchase a pound of methamphetamine for $8,075.

280. On December 13, 2005, defendant VILLEGAS agreed to sell defendant VASQUEZ a Glock .40 caliber handgun, for $450.

281. On December 13, 2005, defendant VILLEGAS asked defendant VASQUEZ if he could receive methamphetamine to take to Las Vegas, Nevada.

282. On December 14, 2005, defendant VILLEGAS told defendant VASQUEZ that he had been living in Las Vegas, Nevada, for the last five months and that he had transported approximately 25 firearms from Las Vegas to Los Angeles, California.

283. On December 14, 2005, defendant VILLEGAS told defendant VASQUEZ that he needed to purchase methamphetamine in order to sell it in Las Vegas, Nevada.

284. On December 14, 2005, defendant VASQUEZ told an unindicted coconspirator to give defendant VILLEGAS money and that defendant VILLEGAS would give her a firearm.

285. On December 14, 2005, defendant VASQUEZ told defendant VILLEGAS that an unindicted coconspirator was going to pick up a Glock handgun from defendant VILLEGAS.

286. On December 14, 2005, defendant VASQUEZ told defendant VILLEGAS to bring another firearm from Las Vegas, Nevada, next time defendant VILLEGAS came to Los Angeles, California.

287. On December 15, 2005, defendant MEDINA demanded that a transvestite prostitute give him money as a fee to work in the

F13 Gang territory.

288. On December 15, 2005, an unindicted coconspirator told a confidential informant, who was posing as a prostitute, that defendant MEDINA would be collecting "taxes."

289. On December 15, 2005, at a donut shop in Huntington Park, California, an unindicted coconspirator told the confidential informant that defendant MEDINA would allow the informant to work as a prostitute if a tax of $30 was paid.

290. On December 15, 2005, after talking to the confidential informant, defendant MEDINA and the unindicted coconspirator exited the donut shop.

291. On December 16, 2005, defendant G. HERNANDEZ told the confidential informant that the fee he was collecting to work as a prostitute was for the F13 Gang.

292. On December 16, 2005, the confidential informant gave defendant G. HERNANDEZ $20 as a "tax" payment.

293. On December 16, 2005, defendant G. HERNANDEZ told the confidential informant that the tax payment would be made on a weekly basis.

294. On December 16, 2005, an unindicted coconspirator told defendant VASQUEZ that he could provide a pound of methamphetamine for $8,000.

295. On December 18, 2005, defendant VILLEGAS told defendant VASQUEZ that he was going to receive a firearm that he would sell to defendant VASQUEZ for $350.

296. On December 18, 2005, defendant VILLEGAS asked an unindicted coconspirator for a pound of methamphetamine.

297. On December 19, 2005, defendant VASQUEZ told defendant

VILLEGAS that he needed additional firearms, including a 9 millimeter handgun and a 40 millimeter handgun.

298. On December 19, 2005, defendant VASQUEZ told an unindicted coconspirator that he was an F13 Gang member.

299. On December 19, 2005, defendant VILLEGAS said he would look for another Glock handgun for defendant VASQUEZ and that he was always getting firearms for other F13 Gang members.

300. On December 20, 2005, defendant VILLEGAS told defendant VASQUEZ that he transported drugs and used his family to avoid detection by law enforcement.

301. On December 21, 2005, defendant VASQUEZ agreed to buy a nine millimeter handgun from defendant VILLEGAS for $450.

302. On December 29, 2005, an unindicted coconspirator told defendant VASQUEZ that he could provide a half-pound of methamphetamine for $4,000.

303. On December 29, 2005, defendant VASQUEZ told an indicted coconspirator that he could provide a half-pound of methamphetamine for $3,600.

304. On January 11, 2006, an unindicted coconspirator wrote unindicted coconspirator AC and told him that he was not telling other F13 Gang members not to listen to unindicted coconspirator AC.

305. On January 11, 2006, an unindicted coconspirator wrote unindicted coconspirator AC and told him that he was loyal to unindicted coconspirator AC and the F13 Gang.

306. On February 10, 2006, defendant VASQUEZ told an unindicted coconspirator that F13 leaders, including unindicted coconspirator AC, did not allow other F13 Gang members to "tax"

drug dealers who were trafficking in drugs with other F13 members.

307. On February 10, 2006, an unindicted coconspirator told defendant VASQUEZ that she had spoken to defendant OLIVA who told her that he was responsible for "taxing" in the F13 area.

308. On February 10, 2006, an unindicted coconspirator informed a second unindicted coconspirator that a third unindicted coconspirator was "taxing" her sales of drugs.

309. On February 12, 2006, defendant VASQUEZ asked an unindicted coconspirator, who was going to visit with unindicted coconspirator AC, if she could take money to unindicted coconspirator AC and determine if defendant OLIVA had the authority to "tax" drug dealers in the F13 Gang territory.

310. On February 15, 2006, defendant AGUILAR asked defendant VASQUEZ for 112 grams of powder cocaine and 28 grams of crack cocaine.

311. On February 17, 2006, defendant VASQUEZ agreed to purchase 86 grams of methamphetamine from an unindicted coconspirator for $1,539.

312. On February 17, 2006, defendant VASQUEZ told defendant MONTOYA to go to an unindicted coconspirator's residence on Broadway Avenue, because defendant VASQUEZ was going to meet him there in order to purchase methamphetamine.

313. On February 17, 2006, defendant VASQUEZ agreed to sell a quarter-pound of methamphetamine for $1,800 to an unindicted coconspirator.

314. On February 17, 2006, defendant VASQUEZ told an unindicted coconspirator to write to unindicted coconspirator AC

in prison to confirm whether defendant OLIVA had the authority to "tax" the unindicted coconspirator's drug dealing associate.

315. On February 17, 2006, at a residence at 2807 Broadway Street, Huntington Park, California ("the Broadway residence"), defendants VASQUEZ and MONTOYA possessed for sale approximately 731.6 grams of powder cocaine, 210.3 grams of crack cocaine, and 36.8 grams of actual methamphetamine.

316. On February 17, 2006, defendants MONTOYA and VASQUEZ discussed the execution of a search warrant at the Broadway residence, and defendant MONTOYA asked defendant VASQUEZ if law enforcement had seized any drugs.

317. On February 17, 2006, defendant VASQUEZ told defendant MONTOYA that they were going to store their drugs in another location.

318. On February 17, 2006, defendant MONTOYA told defendant VASQUEZ that he would provide money to defendant VASQUEZ in order to become partners in distributing drugs.

319. On February 18, 2006, defendant VASQUEZ told defendant MONTOYA that because an unindicted coconspirator had spoken to the police, the Broadway residence was searched.

320. On February 19, 2006, defendant VASQUEZ told an unindicted coconspirator that he had spoken to the residents who lived at 160½ West 76th Street, in Los Angeles, California (the "76th Street residence"), and they were going to store their drugs at that residence.

321. On February 19, 2006, defendant VILLEGAS told defendant VASQUEZ that he had sold a firearm to an unindicted coconspirator, a F13 Gang member, who was present when F13 Gang

member JI shot and killed F13 Gang member VB.

322. On February 20, 2006, defendant VASQUEZ told an unindicted coconspirator to go to the 76th Street residence to pick up seven grams of crack cocaine.

323. On February 22, 2006, defendant VASQUEZ instructed defendant AGUILAR how to manufacture crack cocaine.

324. On February 25, 2006, defendant PANTOJA told defendant VASQUEZ that he was selling methamphetamine in Texas and defendant VASQUEZ told defendant PANTOJA that he had customers in New Mexico.

325. On February 28, 2006, defendant VASQUEZ told an unindicted coconspirator that he was bringing methamphetamine to the 76th Street residence.

326. On February 28, 2006, defendant VASQUEZ and an unindicted conspirator discussed the amount of powder cocaine and crack cocaine that was stored at the 76th Street residence.

327. On March 2, 2006, defendant AGUILAR asked defendant VASQUEZ for 24.5 grams of powder cocaine and 3.5 grams of crack cocaine.

328. On March 7, 2006, at the 76th Street residence, defendant VASQUEZ and MONTOYA possessed with intent to distribute approximately 102.3 grams of powder cocaine, approximately 7.79 grams of crack cocaine, and approximately 12.0 grams, of actual methamphetamine.

329. On March 4, 2006, defendant VASQUEZ told an unindicted coconspirator to pick up powder cocaine from defendant A. HERNANDEZ.

330. On April 8, 2006, defendant CASTILLO, while driving on

Hooper Avenue in Los Angeles, California, possessed a loaded .40 millimeter handgun.

All in violation of Title 18, United States Code, Section 1962(d).

CONCERNING COUNT TWO

THE GRAND JURY FURTHER ALLEGES THAT:

1. Beginning on a date unknown to the Grand Jury and continuing to on or about September 27, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, CASTILLO, AGUILAR, and M. ESTRADA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

a. To distribute at least five kilograms of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

b. To distribute at least 50 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); and,

c. To distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or

at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

2. On or about April 11, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants N. GONZALEZ, A. HERNANDEZ and MONTOYA, and others, did unlawfully conspire to kill with malice aforethought an individual driving a red truck in Los Angeles, in violation of California Penal Code Sections 31, 182 and 187.

3. On or about April 11, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants N. GONZALEZ and A. HERNANDEZ, did unlawfully conspire to kill with malice aforethought an individual male residing on Flower Street, in Los Angeles, California, in violation of California Penal Code Sections 31, 182 and 187.

4. On or about June 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants OLIVA and A. HERNANDEZ, and others, did unlawfully conspire to kill with malice aforethought JI, in Los Angeles, California, in violation of California Penal Code Sections 31, 182 and 187.

5. On or about June 24, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant M. HERNANDEZ unlawfully, willfully, deliberately and with premeditation and malice aforethought, did aid, abet, advise encourage and otherwise participate in the attempted murder of RB, in Los Angeles, California, in violation of California Penal Code Sections 21a, 31, 664, and 187.

6. On or about July 16, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ, FLORES, and others, did unlawfully conspire to kill with malice aforethought DN, in Los Angeles, California, in violation of California Penal Code Sections 31, 182 and 187.

7. On or about July 22, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ and M. HERNANDEZ:

a. Unlawfully, did conspire to kill with malice aforethought TW and DP, in Los Angeles, California, in violation of California Penal Code Sections 21a, 31, 182 and 187; and,

b. Unlawfully, willfully, deliberately and with premeditation and malice aforethought, did aid, abet, advise encourage and otherwise participate in the attempted murder of TW and DP, in Los Angeles, California, in violation of California Penal Code Sections 21a, 31, 664, and 187.

8. On or about August 2, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants A. HERNANDEZ, M. HERNANDEZ, FLORES, and others, did unlawfully conspire to kill with malice aforethought SW, in Los Angeles, California, in violation of California Penal Code Sections 31, 182 and 187.

9. On or about August 2, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant M. HERNANDEZ unlawfully, willfully, deliberately and with premeditation and malice aforethought, did aid, abet, advise encourage and otherwise participate in the attempted murder of

DN, in Los Angeles, California, in violation of California Penal Code Sections 21a, 31, 664, and 187.

COUNT THREE

[21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B)]

1. Paragraphs One through Nine of the Introductory Allegations of this Indictment are realleged and incorporated by reference as though fully set forth herein.

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to on or about September 27, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, CASTILLO, AGUILAR, and M. ESTRADA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1. To distribute at least five kilograms of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

2. To distribute at least 50 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); and,

3. To distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, or at least 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States

Code, Sections 841(a)(1) and 841(b)(1)(A).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. Defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, CASTILLO, AGUILAR and M. ESTRADA, all of whom were members or associates of the F13 Gang, would distribute large quantities of cocaine, cocaine base in the form of crack, and methamphetamine on behalf of the F13 Gang.

2. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 6, 8 through 10, and 12 through 15, in Part A of Count Two setting forth the means by which the conspiracy were to be accomplished as charged in Count Two.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants VASQUEZ, OLIVA, RINCON, CRUZ, J. GONZALEZ, N. GONZALEZ, A. HERNANDEZ, FLORES, M. HERNANDEZ, MONTOYA, MARTINEZ, VILLEGAS, PANTOJA, ORTIZ, GUTIERREZ, DELA CRUZ, ANDRADE, F. ZENDEJAS, J. ZENDEJAS, CASTILLO, AGUILAR and M. ESTRADA and other co-conspirators known and unknown to the Grand Jury, committed various overt acts, within the Central District of California and elsewhere, including but not limited to the following:

331. The Grand Jury re-alleges and incorporates by reference paragraphs 5 through 12, 14 through 20, 23, 25, 27, 29, 35, 45,

67 through 68, 70, 73 through 90, 93 through 95, 97, 100, 105 through 106, 122 through 123, 133 through 142, 149 through 153, 155, 157 through 161, 169, 180 through 182, 186 through 187, 200, 203, 209, 215 through 218, 228, 231 through 234, 243 through 246, 255 through 261, 263 through 272, 277 through 286, 294 through 296, 300 through 303, 306 through 319, 321 through 328, and 330, in Part B of Count Two setting forth the overt acts of the conspiracy charged in Count Two.

COUNT FOUR

[18 U.S.C. §§ 1959(a)(5)]

1. At all times relevant to this Indictment, the F13 Gang, as described more particularly in paragraphs One through Nine of the Introductory Allegations of this Indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.

2. At all times relevant to this Indictment, the F13 Gang, through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, among other things, acts involving murder and attempted murder, in violation of California Penal Code, Sections 21a, 31, 182, 664 and 187, robbery and attempted robbery, in violation of California Penal Code, Sections 31 and 211, extortion, in violation of California Penal Code, Section 581, narcotics trafficking, in violation of Title 21, United States Code, Sections 841 and 846, and laundering of monetary instruments, in violation of Title 18, United States Code, Section 1956.

3. On or about April 11, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing

his position in the F13 Gang, an enterprise engaged in racketeering activity, defendants N. GONZALEZ, A. HERNANDEZ, and MONTOYA, and others, did unlawfully conspire to kill with malice aforethought an individual driving a red truck, in violation of California Penal Code Sections 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT FIVE

[18 U.S.C. §§ 1959(a)(5)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about April 11, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendants N. GONZALEZ, A. HERNANDEZ and others, did unlawfully conspire to kill with malice aforethought an individual residing on Flower Street, in violation of California Penal Code Sections 31, 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT SIX

[18 U.S.C. §§ 1959(a)(5)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about June 18, 2005, in Los Angeles County, within the Central District of California, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendants OLIVA and A. HERNANDEZ, and others, did unlawfully conspire to kill with malice aforethought JI, in violation of California Penal Code Sections 31, 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT SEVEN

[18 U.S.C. §§ 1959(a)(3)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about June 24, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendant M. HERNANDEZ unlawfully and knowingly assaulted RB with a dangerous weapon, that is, a firearm, in violation of California Penal Code, Sections 31 and 245(a)(2), all in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT EIGHT

[18 U.S.C. §§ 1959(a)(5)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about July 16, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendants A. HERNANDEZ and FLORES did unlawfully conspire to kill with malice aforethought LN, in violation of California Penal Code Sections 31, 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT NINE

[18 U.S.C. §§ 1959(a)(3)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about July 16, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendant FLORES unlawfully and knowingly assaulted DN with a dangerous weapon, that is, a firearm, in violation of California Penal Code, Sections 31 and 245(a)(2), all in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT TEN

[18 U.S.C. §§ 1959(a)(5)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about July 22, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing their positions in the F13 Gang, an enterprise engaged in racketeering activity, defendants A. HERNANDEZ and M. HERNANDEZ did unlawfully conspire to kill with malice aforethought TW and DP, in violation of California Penal Code Sections 31, 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT ELEVEN

[18 U.S.C. §§ 1959(a)(3)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about July 22, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing their positions in the F13 Gang, an enterprise engaged in racketeering activity, defendants A. HERNANDEZ and M. HERNANDEZ unlawfully and knowingly assaulted TW and DP with a dangerous weapon, that is, a firearm, in violation of California Penal Code, Sections 31 and 245(a)(2), all in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT TWELVE

[18 U.S.C. §§ 1959(a)(5)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about August 2, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing their position in the F13 Gang, an enterprise engaged in racketeering activity, defendants A. HERNANDEZ, M. HERNANDEZ and FLORES did unlawfully conspire to kill with malice aforethought SW, in violation of California Penal Code Sections 31, 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT THIRTEEN

[18 U.S.C. §§ 1959(a)(3)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about August 2, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing their position in the F13 Gang, an enterprise engaged in racketeering activity, defendant M. HERNANDEZ unlawfully and knowingly assaulted SW with a dangerous weapon, that is, a firearm, in violation of California Penal Code, Sections 31 and 245(a)(2), all in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT FOURTEEN

[18 U.S.C. §§ 1959(a)(3)]

1. Paragraphs one and two alleged in Count Four are hereby incorporated and realleged herein as if set forth in full.

2. On or about September 6, 2005, in Los Angeles County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the F13 Gang, and for the purpose of gaining entrance to and maintaining and increasing his position in the F13 Gang, an enterprise engaged in racketeering activity, defendant M. HERNANDEZ unlawfully and knowingly assaulted DV and RL with a dangerous weapon, that is, a firearm, in violation of California Penal Code, Sections 31 and 245(a)(2), all in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1)]

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants JOSE GONZALEZ, also known as ("aka") Black, aka Negro, and NOE GONZALEZ, aka Lil Black, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 224.3 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants JOSE GONZALEZ, also known as ("aka") Black, aka Negro, and NOE GONZALEZ, aka Lil Black, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 228.7 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (B)(1)(A).

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about May 10, 2005, in Los Angeles County, within the Central District of California, defendants JOSE GONZALEZ, also known as ("aka") Black, aka Negro, and NOE GONZALEZ, aka Lil Black, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 50.5 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1)]

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants NOE GONZALEZ, also known as ("aka") Lil Black, and JESUS ANDRADE, aka Shorty, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 101.3 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants NOE GONZALEZ, also known as ("aka") Lil Black, and JESUS ANDRADE, aka Shorty, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is approximately 154.7 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendants NOE GONZALEZ, also known as ("aka") Lil Black, and JESUS ANDRADE, aka Shorty, knowingly and intentionally possessed with intent to distribute at least 5 grams, that is approximately 6.8 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about August 17, 2005, in the Central District of California, defendants ARTURO CRUZ, also known as ("aka") Art, and MANUEL HERNANDEZ, aka Frog, knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine, that is, approximately one kilogram of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1)]

On or about August 25, 2005, in Los Angeles County, within the Central District of California, defendants ARTURO CRUZ, also known as ("aka") Art, and ALBERTO HERNANDEZ, aka Sugar, aka Cruiser, knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine, that is, approximately 125.1 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT TWENTY-THREE

[18 U.S.C. §§ 1956(a)(1), (A)(I)]

On August 25, 2005, in Los Angeles County, within the Central District of California, defendant ARTURO CRUZ, also known as ("aka") Art, knowingly conducted, and attempted to conduct, a financial transaction affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1), (A)(I).

COUNT TWENTY-FIVE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendants ARTURO CRUZ, also known as ("aka") Art, and ALBERTO HERNANDEZ, aka Sugar, aka Cruiser, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is approximately 397.2 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

COUNT TWENTY-SEVEN

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 731.6 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B).

COUNT TWENTY-EIGHT

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)]

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is approximately 210.3 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

COUNT TWENTY-NINE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 36.8 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT THIRTY

[21 U.S.C. §§ 841(a)(1)]

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine, that is, approximately 102.3 grams of cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT THIRTY-ONE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 7.79 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT THIRTY-TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)]

On or about March 7, 2006, in Los Angeles County, within the Central District of California, defendants JESSE VASQUEZ, also known as ("aka") Pelon, and EDGAR MONTOYA, aka Spunky, knowingly and intentionally possessed with intent to distribute at least 5 grams, that is, approximately 12.0 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B).

COUNT THIRTY-THREE

[18 U.S.C. § 924(c)(1)(A)(I)]

On or about May 26, 2005, in Los Angeles County, within the Central District of California, defendant NOE GONZALEZ also known as Lil Black, knowingly possessed a firearm, namely, a loaded American Derringer, .45 caliber handgun, serial number 46580, and a loaded .223 caliber A-15 rifle, serial number F021851, during and in relation to a drug trafficking crime, namely, conspiracy to distribute cocaine, cocaine base in the form of crack, and methamphetamine, in violation of Title 21, United States Code Section 846, and possessed that firearm in furtherance of that drug trafficking crime.

COUNT THIRTY-FOUR

[18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii)]

On or about June 24, 2005, in Los Angeles County, within the Central District of California, defendant MANUEL HERNANDEZ, also known as Frog, used and carried a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a), as alleged in Count Seven of this Indictment, and, in doing so, brandished and discharged said firearm.

COUNT THIRTY-FIVE

[18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii)]

On or about July 16, 2005, in Los Angeles County, within the Central District of California, defendant FRANCISCO FLORES, also known as Lil Frank, used and carried a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a), as alleged in Count Nine of this Indictment, and, in doing so, brandished and discharged said firearm.

COUNT THIRTY-SIX

[18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), (C)(I)]

On or about July 22, 2005, in Los Angeles County, within the Central District of California, defendants ALBERTO HERNANDEZ, also known as ("aka") Sugar, aka Cruiser, and MANUEL HERNANDEZ, aka Frog, used and carried a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a), as alleged in Count Eleven of this Indictment, and, in doing so, brandished and discharged said firearm.

COUNT THIRTY-SEVEN

[18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), (C)(I)]

On or about August 2, 2005, in Los Angeles County, within the Central District of California, defendant MANUEL HERNANDEZ, also known as ("aka") Frog, used and carried a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a), as alleged in Count Thirteen of this Indictment, and, in doing so, brandished and discharged said firearm.

COUNT THIRTY-EIGHT

[18 U.S.C. § 924(c)(1)(A)(I)]

On or about August 17, 2005, in Los Angeles County, within the Central District of California, defendant MANUEL HERNANDEZ, also known as Frog, knowingly used and carried a firearm, during and in relation to a drug trafficking crime, namely, distribution of cocaine, in violation of Title 21, United States Code Section 841(a)(1), and possessed that firearm in furtherance of that drug trafficking crime.

COUNT THIRTY-NINE

[18 U.S.C. § 924(c)(1)(A)(I)]

On or about August 25, 2005, in Los Angeles County, within the Central District of California, defendant ARTURO CRUZ also known as Art, knowingly possessed a firearm, namely, a loaded Hi Point, 9 x 19 caliber handgun, serial number P223099, during and in relation to a drug trafficking crime, namely, conspiracy to distribute cocaine, cocaine base in the form of crack, and methamphetamine, in violation of Title 21, United States Code Section 846, and possessed that firearm in furtherance of that drug trafficking crime.

COUNT FORTY

[18 U.S.C. § 924(c)(1)(A)(I), (C)(I)]

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendants ARTURO CRUZ also known as ("aka") Art, and ALBERTO HERNANDEZ, aka Sugar, aka Cruiser, knowingly possessed firearms, namely, a Colt, .357 caliber handgun, serial number J35643, and a Sturm Ruger, .22 caliber handgun, serial number 25808, during and in relation to a drug trafficking crime, namely, conspiracy to distribute cocaine, cocaine base in the form of crack, and methamphetamine, in violation of Title 21, United States Code Section 846, and possessed that firearm in furtherance of that drug trafficking crime.

COUNT FORTY-ONE

[18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), (C)(I)]

On or about September 6, 2005, in Los Angeles County, within the Central District of California, defendant MANUEL HERNANDEZ, also known as ("aka") Frog, knowingly and intentionally aided, abetted, counseled, commanded, induced, and procured the use and the carrying of a firearm, during and in relation to a crime of violence, namely Violent Crime in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a), as alleged in Count Fourteen of this Indictment, and in doing so, aided, abetted, counseled, commanded, induced, and procured the brandishing of said firearm.

COUNT FORTY-TWO

[18 U.S.C. § 924(c)(1)(A)(I), (C)(I)]

On or about February 17, 2006, in Los Angeles County, within the Central District of California, defendant JESSE VASQUEZ, also known as Pelon, knowingly possessed a firearm, namely, a Glock, .40 caliber handgun, serial number DYZ077US, during and in relation to a drug trafficking crime, namely, conspiracy to distribute cocaine, cocaine base in the form of crack, and methamphetamine, in violation of Title 21, United States Code Section 846, and possessed that firearm in furtherance of that drug trafficking crime.

COUNT FORTY-THREE

[18 U.S.C. § 922(g)(1)]

On or about May 25, 2005, in Los Angeles County, within the Central District of California, defendant NOE GONZALEZ, also known as Lil Black ("GONZALEZ"), knowingly possessed firearms, namely, a DPMS ("Defense Procurement Manufacturing Services"), .223 caliber rifle, model A-15, serial number F021851; a North China Industries ("Norinco"), .556 caliber rifle, model 845, serial number 405545; a Marlin, .22 caliber rifle, model 60, serial number 1400877; a Marlin, .22 caliber rifle, model Glenfield Model 60, serial number 21449817; and an American Derringer pistol, .45 caliber, model M-1, serial number 46580, in and affecting interstate and foreign commerce.

Such possession occurred after defendant GONZALEZ had been convicted of at least one of the following felonies, each punishable by a term of imprisonment exceeding one year:

(1) Assault with a Deadly Weapon, in violation of California Penal Code Section 245(a)(1), in the Superior Court of Los Angeles County, Southeast District, case number VA080065, on or about May 25, 2004; and

(2) Evading a Peace Officer, in violation of California Vehicle Code Section 2800.2(a), in the Superior Court of Los Angeles County, Southeast District, case number VA079605, on or about December 12, 2003.

COUNT FORTY-FOUR

[18 U.S.C. § 922(g)(1)]

On or about May 25, 2005, in Los Angeles County, within the Central District of California, defendant FELIX MARTINEZ, also known as Wacko ("MARTINEZ"), knowingly possessed a firearm, namely, a DPMS ("Defense Procurement Manufacturing Services"), .223 caliber rifle, model A-15, serial number F021851, in and affecting interstate and foreign commerce.

Such possession occurred after defendant MARTINEZ had been convicted of the following felony, punishable by a term of imprisonment exceeding one year:

(1) Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of Los Angeles County, Southeast District, case number VA028134, on or about December 4, 1994.

COUNT FORTY-FIVE

[18 U.S.C. § 922(g)(1)]

On or about August 17, 2005, in Los Angeles County, within the Central District of California, defendant ARTURO CRUZ, also known as Art ("CRUZ"), knowingly possessed a firearm, namely, a Kimber model BP Ten II, .45 caliber pistol, serial number KPA15667, in and affecting interstate and foreign commerce.

Such possession occurred after defendant CRUZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Los Angeles County, Southeast District, case number VA021497, on or about October 31, 1994;

(2) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Orange County, case number 96CF1885, on or about July 29, 1996.

COUNT FORTY-SIX

[18 U.S.C. § 922(g)(1)]

On or about August 25, 2005, in Los Angeles County, within the Central District of California, defendant ARTURO CRUZ, also known as Art ("CRUZ"), knowingly possessed a firearm, namely, a loaded Hi Point, 9 x 19 caliber pistol, serial number P223099, in and affecting interstate and foreign commerce.

Such possession occurred after defendant CRUZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Los Angeles County, Southeast District, case number VA021497, on or about October 31, 1994;

(2) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Orange County, case number 96CF1885, on or about July 29, 1996.

COUNT FORTY-SEVEN

[18 U.S.C. § 922(g)(1)]

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendant ARTURO CRUZ, also known as Art ("CRUZ"), knowingly possessed firearms, namely, a Colt revolver, .357 caliber, serial number J35643, a Sturm Ruger Co., .22 caliber handgun, serial number 25808, and a North China Industries, 7.62 caliber rifle, serial number 1605994, in and affecting interstate and foreign commerce.

Such possession occurred after defendant CRUZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Los Angeles County, Southeast District, case number VA021497, on or about October 31, 1994;

(2) Burglary, in violation of California Penal Code Section 459, in the Superior Court of Orange County, case number 96CF1885, on or about July 29, 1996.

COUNT FORTY-EIGHT

[18 U.S.C. § 922(g)(1)]

On or about August 30, 2005, in Los Angeles County, within the Central District of California, defendant ALBERTO HERNANDEZ, also known as Sugar ("A. HERNANDEZ"), knowingly possessed firearms, namely, a Colt revolver, .357 caliber, serial number J35643, and a Sturm Ruger Co., .22 caliber handgun, serial number 25808, in and affecting interstate and foreign commerce.

Such possession occurred after defendant A. HERNANDEZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Possession of cocaine base for sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court of Los Angeles County, Southeast District, case number VA063323, on or about March 16, 2001; and,

(2) Possession of cocaine base for sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court of Los Angeles County, Southeast District, case number VA073089-01, on or about December 5, 2002.

COUNT FORTY-NINE

[18 U.S.C. § 922(g)(1)]

On or about December 14, 2005, in Los Angeles County, within the Central District of California, defendant JESSE VASQUEZ, also known as Pelon ("VASQUEZ"), knowingly possessed a firearm, namely, a Glock, model 23, .40 caliber pistol, serial number DYZ077US, in and affecting interstate and foreign commerce.

Such possession occurred after defendant VASQUEZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of Los Angeles County, Southeast District, case number VA037549, on or about January 8, 1997; and,

(2) Possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of Los Angeles County, Southeast District, case number VA076651, on or about June 16, 2003.

COUNT FIFTY

[18 U.S.C. § 922(j)]

On or about December 14, 2005, in Los Angeles County, within the Central District of California, defendant ENRIQUE VILLEGAS, also known as Mono, possessed, sold and disposed of a stolen firearm, namely, a Glock, model 23, .40 caliber pistol, serial number DYZ077US, in and affecting interstate and foreign commerce, knowingly or having reasonable cause to believe that the firearm was stolen.

COUNT FIFTY-ONE

[18 U.S.C. § 922(g)(1)]

On or about April 5, 2007, in Los Angeles County, within the Central District of California, defendant CESAR DELA CRUZ, also known as Thumper ("DELA CRUZ"), knowingly possessed a firearm, namely, a Smith and Wesson, model Airweight, .38 caliber revolver, serial number CHZ3295, in and affecting interstate and foreign commerce.

Such possession occurred after defendant DELA CRUZ had been convicted of at least one of the following felonies, punishable by a term of imprisonment exceeding one year:

(1) Possession of a narcotic controlled substance for sale, in violation of California Health and Safety Code Section 11359, in the Superior Court of Los Angeles County, Southeast District, case number VA085113-01, on or about January 20, 2005;

(2) Possession of a narcotic controlled substance, in violation of California Health and Safety Code Section 11350(a), in the Superior Court of Los Angeles County, Southeast District, case number VA076003-01, on or about April 9, 2004; and,

(3) Possession of a narcotic controlled substance for sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court of Los Angeles County, Southeast District, case number VA059585, on or about March 1, 2001.

COUNT FIFTY-TWO

[18 U.S.C. § 1963]

1. Pursuant to Title 21, United States Code, Section 1963(a), each defendant who is convicted of the offense set forth in any of Counts One and Two shall forfeit to the United States the following property:

(a) Any interest the person has acquired or maintained in violation of Section 1962;

(b) Any interest in, security of, claim against, and property or contractual right of any kind affording a source of influence over any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct, in violation of Section 1962;

(c) Any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One and Two.

2. Pursuant to Title 18, United States Code, Section 1963(m), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 1(a), if, as the result of any act or omission of said defendant, said property, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

COUNT FIFTY-THREE

[21 U.S.C. § 853]

1. Pursuant to Title 21, United States Code, Section 853, each defendant who is convicted of the offense set forth in any of Counts Three, Fifteen through Twenty-Two and Twenty-Four through Thirty-Two shall forfeit to the United States the following property:

(a) All right, title, and interest in any and all property --

(i) constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts Three, Fifteen through Twenty-Two and Twenty-Four through Thirty-Two and

(ii) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, each such offense.

(b) A sum of money equal to the total value of the property described in paragraph 1(a)(i), representing the amount of proceeds obtained as a result of the offenses, less the value of actual proceeds forfeited, for which the defendants are jointly and severally liable.

2. Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 1(a), if, as the result of any act or omission of said defendant, said

property, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL

______________________
Foreperson

GEORGE S. CARDONA
United States Attorney
David L. Gordon, Deputy Chief, Criminal Division, FOR:
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

PETER A. HERNANDEZ
Assistant United States Attorney
OCDETF Section